GEORGE BRAY, and another, Executors, in equity,

*vs.*

ELDON H. PULLEN, and others.

Franklin.    Opinion January 14, 1892.

*Will.    Devise.    Descent.    Lapsed Legacy.    R. S., c. 74, § 10.*

A testator by the fifth item of his will made the following bequest: "I give and bequeath to the children of Lydia Pullen, late wife of the late Alvin Pullen, deceased, and grandchildren of my late sister, Betsey S. Burbank, deceased, the sum of seven thousand dollars to be equally divided between them." Betsey S. Burbank was a sister of the testator, and she left three children living at the testator's death; also one daughter, Lydia Pullen, who was dead at the time the will was made. This daughter left one son, Eldon H. Pullen and three grandchildren, — children of another son who was deceased. *Held*, that Eldon H. Pullen takes one half, and the three grandchildren the other half, of the seven thousand dollar bequest made "to the children of Lydia Pullen."

Any legacy which was intended for the father of the three grandchildren of Betsey S. Burbank, although he was not living at the time the will was made would not lapse, but would go to his lineal descendents under R. S., c., 74, § 10, which provides that when a relative of the testator, having a devise of real or personal estate, dies before the testator, leaving lineal descendents, they take such estate as would have been taken by such deceased relative if he had survived.

The testator also bequeathed to Hiram Hackett all the neat stock, sheep, horses, colts, swine and other animals . . . which he owned at the time of his decease. *Held*, that the intention of the testator was to give not only the sheep upon the home farm, but also all those which he owned on other farms.

ON REPORT.

The case is stated in the opinion.

*W. P. Fred Fogg*, for plaintiff.

*P. H. Stubbs*, for Hiram A. Hackett.

*J. C. Holman*, for Freddie B. Pullen and others.

*E. O. Greenleaf*, for Eldon H. Pullen.

FOSTER, J.   The plaintiffs, executors of the last will and testament of Israel R. Bray, deceased, seek by this bill a construction of certain provisions of the will.

The only questions presented for our consideration arise under the fifth and seventh items, which, so far as are material to this case, are as follows :

" Item Fifth.   I give and bequeath to the children of Lydia Pullen, late wife of the late Alvin Pullen, deceased, and grandchildren of my late sister, Betsy S. Burbank, deceased, the sum of seven thousand dollars, to be equally divided between them. And to Benjamin B. Burbank of Freeman, State of Maine, Israel B. Burbank of the State of Minnesota and Mary J. Burbank, wife of Daniel Sedgeley, children of the said Betsy S. Burbank, my late sister, I give and bequeath seven thousand dollars each."

" Item Seventh.   .   .   .   I also give and bequeath unto the said Hiram Hackett all the neat stock, sheep, horses, colts, swine and other animals, all the household furniture and household goods of every kind, all the farming implements and farming tools, also all the carts, wagons, sleds, sleighs, plows, harrows, carriages of all kinds, chains, bows, ox-yokes and all other implements used for farming purposes, buffalo, and wolf robes, and all other carriage and sleigh furniture, and all the crops of every kind, and all the food of every kind, all books of every kind except account and memorandum books, all fire wood and down wood and lumber, also all the clothing, watches and clocks, which I may own at the time of my decease."

The other provisions in the will become important only as tending to throw light upon the questions raised in relation to the intention of the testator as disclosed by the foregoing items.

Betsy S. Burbank, mentioned in the fifth item, was a sister of the testator.   She left three children living at the testator's death, viz. :—Benjamin B. Burbank, Israel B. Burbank, and Mary J. Burbank, to each of whom was bequeathed seven thousand dollars, as appears by the latter portion of the same

item. She also left one daughter, Lydia Pullen, who was dead at the time the will was made. This daughter, Lydia Pullen, left one son, Eldon H. Pullen, and three grandchildren,— children of another son, Benjamin, who was deceased. Eldon, the only living child of Lydia Pullen, claims the whole of the seven thousand dollar bequest made "to the children of Lydia Pullen,"— and the children of his deceased brother, Benjamin, claims one half of it. This is the contention arising under the fifth item.

Hereupon the following inquiry is addressed to us:

I. Who under said will is entitled to the legacy of seven thousand dollars bequeathed to the children of Lydia Pullen?

1. The decisions in other cases in the construction of wills, as a general rule, can afford but little aid, inasmuch as each case must be governed by the language of the testator and the intention as manifested by that language. It is, therefore, unnecessary to state more than those elementary principles so often laid down by the courts, that in the construction of wills the general rule is, that the intent of the testator as expressed in the will and not otherwise is to govern. In ascertaining this intention the court is not confined to any particular clause, but is at liberty to consider all parts of the will, inasmuch as one clause is often modified or explained by another. The intention of the testator in one particular paragraph, if not entirely clear, may be ascertained when other paragraphs or clauses are considered and their bearing and relation, one with another, taken into account. The intention of the testator must be the guiding star. Applying these elementary principles and general rules of interpretation to the case at bar, we are satisfied that it was the intention of the testator to give Eldon H. Pullen only one half of the seven thousand dollar bequest, and that the other half was to go to the children of his deceased brother Benjamin.

As casting some light upon the intention of the testator when he made the will, he gave in the same item seven thousand dollars to each of the children then living of his deceased sister, Betsy S. Burbank.

Eldon H. Pullen and three minor children of his deceased

brother Benjamin, were the only living lineal descendants of Lydia Pullen, the other child of Betsey S. Burbank. He had treated the living children of his late sister alike by making a bequest of seven thousand dollars to each of them. Lydia, the other child of his deceased sister was dead, but she had left one child, Eldon, then living, and there were living three minor children of Eldon's deceased brother Benjamin. These living, represented Lydia dead. May it not be properly inferred that the testator intended to give those who represented Lydia the same in amount as she would in all probability have received if alive?

Equality is strongly manifested not only in the item under consideration, but also in the third and sixth items.

Notwithstanding, the testator in express terms bequeaths seven thousand dollars to the "children of Lydia Pullen," to be "equally divided between them," Eldon claims that he was the only child of Lydia living at the date of the will, and consequently entitled to the whole sum. Such a construction as that would give Eldon, a grandchild of the testator's deceased sister, Betsy S. Burbank, a legacy equal in amount to that given to her own children in the same item of the will, and leave three small children of Eldon's deceased brother without anything. Had it been the intention of the testator to give Eldon the whole of the legacy of seven thousand dollars, there is no apparent reason why he should have used language bequeathing it "to the children of Lydia Pullen," instead of using the singular number, or designating Eldon by name.

2. Eldon and Benjamin were the children of Lydia Pullen, and relatives of the testator. Benjamin had died leaving lineal descendants. Any legacy, therefore, which was intended for Benjamin as one of "the children of Lydia Pullen," would not lapse, but would go to his lineal descendants, under the statute which provides that when a relative of the testator, having a devise of real or personal estate, dies before the testator, leaving lineal descendants, they take such estate as would have been taken by such deceased relative if he had survived. R. S., c. 74, § 10. *Nutter* v. *Vickery*, 64 Maine, 490, 498; *Moses* v.

*Allen*, 81 Maine, 268, 271 ; *Morse* v. *Hayden*, 82 Maine, 227, 230. This statue is in furtherance of what may be presumed to have been the intention of the testator, and prevents the operation of the common law, and upholds devises which would otherwise lapse. *Snow* v. *Snow*, 49 Maine, 159, 163. Thus, in *Nutter* v. *Vickery*, *supra*, it was held that upon reason, principle and authority, the lineal descendants of a relative of the testator having a bequest in the will are entitled to the legacy given to their ancestor though the original legatee was in fact, dead at the date of the will.

And it makes no difference in the application of the rule whether the bequest is made to such relative by name, or whether he is designated in the will only by his relationship. *Moses* v. *Allen*, 81 Maine, 268, 271.

II. Who under said will is entitled to said writings obligatory, and the sheep in them mentioned?

The testator was an extensive dealer in wool, and at the time of his death owned a large number of sheep. There were about one hundred and thirty upon his home farm, and five hundred and ninety-six upon other farms.

No question is raised except in relation to the sheep that were away from the home farm, and which were leased to different individuals by certain writings or obligations, fifteen in number. Copies of all these obligations have been annexed to the bill ; and from them it appears that the testator was, without question, the owner of all the sheep mentioned in them. The lessees were to return the same sheep, paying for their use in wool. The offspring belonged to the lessees.

By the seventh item of the will the testator makes use of this language : "I also give and bequeath unto the said Hiram Hackett all the neat stock, sheep, horses, colts, swine and other animals . . . . . which I may own at the time of my decease."

The language of this bequest is clear, and there is no qualification or limitation of it in any part of the will. No bequest of the sheep is made to any one else. No one knew better than the testator that he was the owner of the sheep mentioned in the

several writings, and if he had intended to restrict this gift of sheep to those upon his homestead farm at the date of his will, or at the time of his decease, it would have been a very easy matter so to have expressed himself.  Not having done so, but having used · language that is too clear to be susceptible of any other meaning than that expressed by it, we have no doubt that Hiram Hackett is entitled to the sheep mentioned in the several writings.  It is the duty of the executors to ascertain what sheep were owned by the testator at the time of his decease, whether by the aid of the writings mentioned or otherwise, and to deliver the same over to the party entitled to them.

As this bill was brought by the executors in good faith to obtain a construction of the will upon provisions in relation to which doubts might well exist, costs, including reasonable counsel fees, are allowed to all the parties to this suit, to be paid by the executors out of the assets of the estate, and charged in their administration account.

*Decree accordingly.*

PETERS, C. J., WALTON, VIRGIN, EMERY and HASKELL, JJ., concurred.