## IN RE ESTATE OF ANDREW MIKKELSEN.

**WILLS:** Rights of Devisees—Offsetting Debt Against Devisee. When a devisee dies in the lifetime of the testator, and is then indebted to the testator, the executor may retain the devise, to apply on the indebtedness.

Headnote 1:  24 C. J. p. 488 (Anno.)

Headnote 1:  1 A. L. R. 1016; 30 A. L. R. 775; 11 R. C. L. 245.

*Appeal from Shelby District Court.—*T. C. WHITMORE, Judge.

DECEMBER 14, 1926.

This case comes here on appeal from an order sustaining objections of S. C. Pedersen, as guardian of the minor children of Paul Mikkelsen, to the final report of the executor of the estate of Andrew Mikkelsen.—*Reversed.*

*Preston & Dillinger,* for appellant.

*Ernest M. Miller,* for appellee.

MORLING, J.—The question presented is this: When a devisee dies in the lifetime of a testator, and is then indebted to the testator, may the executor retain the devise to apply on the indebtedness, or are the heirs of the predeceased devisee entitled to payment of the devise in full, without regard to such indebtedness? We use the words "devise," etc., in the statutory sense. Section 11860, Code of 1924. Section 11861, Code of 1924, reads:

"If a devisee die before the testator, his heirs shall inherit the property devised to him, unless from the terms of the will a contrary intent is manifest."

The will before us directed the executor to convert the residuary estate into cash, and to distribute the proceeds among the widow, the surviving children, and the grandchildren of a deceased child in the proportions named, one of the designated shares to a son, Paul Mikkelsen. Paul died intestate, before testator, owing him $9,000. His share amounts to $3,767.07. The executor filed a claim against Paul's estate, which, in the opinion of the executor, is insolvent. Paul left minor children; and their guardian, S. C. Pedersen, demands for them full payment of Paul's share of the fund to be distributed according to the will. The executor claims the right to retain the share, to apply on Paul's indebtedness.

It is unquestioned that, if Paul had survived the testator, the executor would have had the right of retention. *Citizens' St. Bank v. Jess,* 127 Iowa 450; *Garrett v. Pierson,* 29 Iowa 304; *Bowen v. Evans,* 70 Iowa 368; 24 Corpus Juris 487. The guardian's contention is that, under Section 11861, Paul's heirs

take the bequest by the will, directly from the testator, and not through Paul or his estate, and that, therefore, the indebtedness of the devisee or of his estate is not chargeable against the devise, which by force of the statute is to them. It is true that, under our holdings and the general rule, the heirs of the predeceased devisee take by force of the statute, under the will, and not through the estate of the original devisee. *In re Estate of Hulett*, 121 Iowa 423. See *Carpenter v. Severin*, 201 Iowa 969.

It is also true that a number of authorities hold, under similar statutes, that the substituted devisees take the devise free from indebtedness of the original devisee to the testator. *Hemsley v. Hollingsworth*, 119 Md. 431 (87 Atl. 506); *Wattenbarger v. Payne*, 162 Mo. App. 434 (145 S. W. 148;) *Vogel v. Turnt*, 110 Md. 192 (72 Atl. 661); *McLaughlin v. McGee*, 131 Md. 156 (101 Atl. 682); *Barnum v. Barnum*, 119 Mo. 63 (24 S. W. 780); *Powers v. Morrison*, 88 Tex. 133 (30 S. W. 851).

We are of the opinion that these authorities give to the statute an effect which the testator, whose purpose should control, and who in most cases is wholly uneducated and uninformed concerning the technical rules and refinements of the laws regulating the testamentary disposition of property and the rules of descent, never intended. Except for the statute, the bequest would lapse, on the death of the devisee in the testator's lifetime. The purpose of the statute is, as stated in the *Hulett* case, 121 Iowa 423, 425, "to preserve the devise, to a greater or less extent, for the benefit of persons who would presumably have enjoyed the benefits of such devise, had the devisee survived the death of the testator and died immediately afterward." See, also, *McAllister v. McAllister*, 183 Iowa 245, 248; *In re Will of Watenpaugh*, 192 Iowa 1178, 1180.

Testator had a number of children. His purpose evidently was to treat them and the children of those who had died before equally *per stirpes*. It is to be assumed that the indebtedness of Paul was, at the time the will was made, a part of his estate which he intended to divide; or, if it had not then been created, the indebtedness was later created at the expense of the estate. It plainly was not the testator's intention to give to Paul any advantage over his other children. He took the note for the $10,000, and it was his inten-

tion and assumption that the note would be paid, and that his other children would share equally with Paul in the part of his estate that was or should be represented by Paul's debt to him. Manifestly, it was not his purpose to give Paul $10,000 and in addition give him a share of the rest of his estate. In the will testator did not take into account the possibility that Paul might predecease him, and that, therefore, Paul's debt might not be paid, and that his other children would thereby be deprived of their share in that portion of his estate. There is no doubt that, if Paul had survived his father, though for only an instant, he would have taken the devise subject to the right of retainer, and that Paul's children would have obtained no greater rights in testator's estate than Paul had. Must the accident of Paul's death shortly before that of his father, and the effect of the statute resulting from judicial or legal reasoning, be held to give Paul's children that which the statute does not in terms give them, and which manifestly we think the testator cannot be assumed to have intended? In the case of a legacy by a testator standing *in loco parentis,* a subsequent benefit by way of payment or contract is usually presumed to be an ademption or satisfaction, on the theory that double portions to a child are not intended. *In re Estate of Youngerman,* 136 Iowa 488, 492. As said in *Davis v. Close,* 104 Iowa 261, 263:

"To hold that W. T. Close should not only have the notes, but an additional one thousand dollars as well, would be taking from the other children to benefit him. Evidently, this was not the testator's intention. But, whether this be true or not, the rule seems to be well settled that, if a legacy be given by a parent, or one standing *in loco parentis,* and the testator afterwards make an advancement or gift of money or property *ejusdem generis* to the same beneficiary, the presumption will arise that the gift was intended in satisfaction of, or substitution for, the prior legacy; and, unless this presumption be rebutted, an ademption, in full or *pro tanto,* as the gift is equal to or less than the prior benefit, will occur. *Richardson v. Eveland,* 126 Ill. Sup. 37 (18 N. E. Rep. 308; 1 L. R. A. 203); 2 Pomeroy, Equity Jurisprudence, Sections 554-557; Story, Equity Jurisprudence, Sections 1111, 1112; *Richards v. Humphreys,* 15 Pick. 133; Beach, Modern Equity, Sections 1047, 1050."

See, also, 40 Cyc. 1915.

The law respecting advancements is ordinarily applicable only to cases of intestacy, but the doctrine of ademption, though strictly speaking applying only to personal property or to legacies, is resorted to, to carry out the apparent or presumed intention of a testator that one to whom he stands *in loco parentis* may not receive a double portion of the estate. *In re Estate of Hall*, 132 Iowa 664. We think it could not be presumed that the testator, on this record, intended that his son might have $10,000 of his estate and his other children be deprived of their shares in that amount, and still that his son's children should share equally with his other children and grandchildren in what should remain of his estate. The question here is as to the rights of the testator's children under the will, and we think that the intention as it may be found in the will and the attendant circumstances should control, rather than technical rules of statutory construction that he doubtless knew nothing about. We prefer, to the authorities previously cited, the doctrine of those to which we are about to refer.

In *Executors of Denise v. Denise*, 37 N. J. Eq. 163, 167, under a statute which, though differently worded, is given the same effect as that given to our statute in the *Hulett* case (*Suydam v. Voorhees*, 58 N. J. Eq. 157 [43 Atl. 4]), it is said:

"The law of the land constitutes a part of every will, and the rights of every legatee must be defined, measured, and enforced by its rules. The law says a legatee indebted to his testator must pay his debt, or his legacy may be applied in discharge of his debt. That being the standard by which the rights of a legatee thus situated must be measured, I cannot regard it as true, either in fact or in logic, that he takes his legacy free from his debt; on the contrary, I think the fact is that his legacy is so absolutely subject to the payment of his debt that, if his debt happens to exceed his legacy, he cannot collect a penny of his legacy. * * * It [the statute] meant simply to put them [the grandchildren] in the place of their parent, in such a contingency, and to give them a right to take what their parent would have taken, if he had survived the testator. But it is quite manifest, I think, that it was not intended to raise grandchildren to a plane higher than that which their parent could ever have occupied, or to give them rights, as against the other beneficiaries under the will, which the person in whose place they

are substituted never would have been permitted to assert: : The statute-made legatee is a mere substitute; he is thrust, by force of the statute, in the place made vacant by the death of the legatee named in the will, and is given what, but for his death, would have gone to the primary legatee. He takes the primary legatee's place, as a beneficiary under the will, and should, according to the ordinary rule prevailing in like cases, bear his burdens, and be subject to the equities which would have existed against him. The statute was designed simply to relieve from a hardship, and should not, by construction, be extended beyond the purpose of its enactment. It is in derogation of the right of testamentary disposition; it makes persons legatees not designated as such by the testator. It is true this is done on the theory, which is probably correct in the great majority of instances, that, if the testator had foreseen the condition of affairs actually existing at the time his will takes effect, he would have made the same persons legatees that the statute makes * * *."

In *Baker v. Carpenter*, 69 Ohio St. 15 (68 N. E. 577, 579), it is said:

"But certainly we think it was not the purpose, and could never have been the intention, of the legislature by the enactment of this statute to secure to the grandchildren of the testator greater rights and privileges than their parent—the primary legatee— could have had; nor may we reasonably assume that it was the intention of the legislature to give to such grandchildren rights against other beneficiaries under the will which the person in whose place they stand, and for whom they are substituted, never would himself have been permitted to assert. Yet such result must inevitably follow if the statute under consideration is to have the construction and interpretation contended for by the plaintiffs in error. The rule of construction is elementary, that statutes must always be construed so as to give effect to the intent and object of the legislature. The statute now under review, as we have seen, was designed to relieve from a hardship, and should, therefore, be so read and interpreted as to cure the mischief it was intended to remedy; but its meaning and effect must not be enlarged or extended by construction beyond the purpose of its enactment."

The withholding of the legatee's indebtedness in paying

the bequest is not a matter of set-off. As said in *Webb v. Fuller*, 85 Me. 443, 445 (27 Atl. 346) :

"It is an equitable right of its own nature, and not at all dependent upon any statute. It is the plain moral, as well as legal, duty of the debtor to pay his debt to the estate. He has had the value from the estate. He ought, in morals and law, to restore it. * * * The right of a legatee or an heir in the estate of a decedent is not self-evident nor equitable. He has paid no value for it,—has not earned it. It is a matter of grace."

As said in *In re Estate of Lietman*, 149 Mo. 112, 120 (50 S. W. 307, 309) :

" * * * it rests upon wholesome principles of right and justice, which can be administered in probate courts, without the aid of a court of conscience."

See, also, 24 Corpus Juris 489.

The legacy does not operate at the time of the death of the testator as payment, so as to stop interest. *Bowen v. Evans*, 70 Iowa 368. Though, as a claim against the estate, the indebtedness may be barred by the statute, still it may be taken into consideration in settling the estate. *Garrett v. Pierson*, 29 Iowa 304; *Holden v. Spier*, 65 Kan. 412 (70 Pac. 348). It is true that children of the deceased devisee do not owe the debt, and that, as his estate is insolvent, it may be that they have obtained no benefit from it. Whatever the facts in this respect, are we to think that it cannot be assumed that the testator, whose estate to the extent of $10,000 had been used by the devisee, intended that, if the $10,000 were lost to the estate, the children of the devisee who had lost the money should share equally with the testator's other children in the residue of the estate? Our holding is in accordance with the principle upon which the *Hulett* case was decided, of carrying out the presumed intention of the testator of preserving the devise for the benefit of those who would presumably have enjoyed it, had the devisee survived testator and died immediately afterward. The testator, we think, had in mind that Paul would survive him, and when Paul became indebted to him, as he did not change his will, that the debt would be paid, or, if not paid, at least that Paul should not have more, and that Paul's estate or the benefits which Paul's

children would secure through Paul would not be augmented by Paul's prior death and failure to pay his debts.

The statute is that the devisee's "heirs shall inherit the property devised to him." We think it would be unduly extending this statute to say that the heirs of the devisee should inherit more than was devised to him, should he die first, as would be the result of sustaining the judgment below.

The judgment is—*Reversed.*

DE GRAFF, C. J., and EVANS and ALBERT, JJ., concur.