[Civ. No. 9882.   First Appellate District, Division Two.—November 6, 1935.]

In the Matter of the Estate of CLARA SLOCOMB PEW, Deceased.   CLARENCE W. DOBIE, as Executor, etc., et al., Appellants, v. BOOTH KNOX, Respondent.

Olin L. Berry and Delbert L. Berry for Appellants.

Paul C. Dana, Francis B. Perry, Joseph H. Mayer, Morgan V. Spicer and George D. Perry for Respondent.

STURTEVANT, J.—This is an appeal by the executor from a decree of distribution.

In the decree appealed from the trial court ordered the bequest of $5,000 to Newton B. Knox be paid in full.   The

executor contends that there should have been deducted from said bequest the sum of $3,300 or thereabouts, the amount of a certain promissory note made by Newton B. Knox which evidenced loans theretofore made by John W. Pew, the husband of the testatrix.

In so far as any of its provisions are pertinent to the question before us the will provided as follows:

"I, Clara Slocomb Pew, of the City and County of San Francisco, State of California, being of sound mind and memory and not acting under duress, menace, fraud or undue influence of any person or persons whatsoever, do hereby make, publish and declare this my last will and testament in the manner following, that is to say:

"1. I hereby revoke all former wills made by me.

"2. I hereby direct that all my just bills be paid.

"3. I hereby give and bequeath unto my nephew Newton B. Knox at present residing in London, England, the sum of Five thousand ($5000) dollars. . . .

"6. I hereby give and bequeath unto Booth Knox of Palo Alto, California, now attending Stanford University, the sum of Twenty-five hundred ($2500) dollars. . . . "

The record discloses that the testatrix was possessed of properties exceeding $400,000. By the terms of her will the testatrix made personal bequests to over twenty individuals in sums varying from $1,000 to $10,000. To certain charities she bequeathed $1,000 to each. The residue she bequeathed one-half to her sister and one-fourth to each of two nephews. Between the years 1927 and 1930, Newton B. Knox borrowed from John W. Pew, the deceased husband of the testatrix, certain sums of money and as evidence thereof made and delivered to Mr. Pew promissory notes. On May 3, 1930, Mr. Pew died. In the settlement of his estate the notes were appraised as of no value. On May 29, 1930, the testatrix made her will. On September 15, 1931, Newton B. Knox made and delivered to the testatrix a note in the sum of $3,182.95 and the earlier notes were delivered up and canceled. No part of the principal or interest on the note hereinabove last mentioned has been paid. The legacy to Booth Knox mentioned in paragraph 6 of the will was paid in full by the executor. Newton B. Knox died on May 15, 1932. The testatrix died December 25, 1933. In applying for a decree of distribution the executor asked the probate court to

deduct from the legacy to Newton B. Knox the amount of the promissory note and direct a payment to Booth Knox of the balance only. To that request Booth Knox objected and asserted that he was entitled to be paid the full sum, $5,000. (Probate Code, sec. 92.) The trial court refused the request made by the executor and ordered the full sum of $5,000 provided in paragraph 3 of the will be paid to Booth Knox.

The controversy between the parties presents a question that has never been decided by a court of appeal in this state. Other states have statutes similar to, but not identical with, section 92 of the Probate Code. In many of the states similar questions have arisen. The executor cites and relies on *Baker* v. *Carpenter,* 69 Ohio St. 15 [68 N. E. 577], and *Denise's Exrs.* v. *Denise,* 37 N. J. Eq. 163. On the other hand, the respondent cites and relies on *Carson* v. *Carson's Exr.,* (1 Metc. (58 Ky.) 300; *Succession of Morgan,* 23 La. Ann. 290; *Wattenbarger* v. *Payne,* 162 Mo. App. 434 [145 S. W. 148]; *Wallace* v. *Dubois,* 65 Md. 153 [4 Atl. 402]; *Courtenay* v. *Courtenay,* 138 Md. 204 [113 Atl. 717], and some other cases which he claims to be helpful *arguendo.* As pointed out by the Supreme Court of Iowa in the case entitled *In re Mikkelsen's Estate,* 202 Iowa, 842 [211 N. W. 254], the authorities are in hopeless conflict as to some factors entering into the controversy, although they are agreed on others. Whatever may be the rights of Booth Knox as the surviving son of Newton B. Knox, the authorities are agreed that his right flows from the statute (Probate Code, sec. 92) and not through the estate of his father. Again, if the written words of the will of Mrs. Pew were the sole statement of the subject-matter to be considered, Booth Knox would have no claim. But under settled law the court is bound to read into the will of Mrs. Pew section 92 of the Probate Code. That section is as follows:

"If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute another in his place; except that when any estate is devised or bequeathed to any kindred of the testator, and the devisee or legatee dies before the testator, leaving lineal descendants, or is dead at the time the will is executed, but leaves lineal descendants surviving the testator, such descendants take the estate so given by the will

*in the same manner* as the devisee or legatee would have done had he survived the testator.'' (Italics ours.)

In the case of *Baker* v. *Carpenter*, 69 Ohio St. 15, at page 23 [68 N. E. 577, 579], the court said: ''The plaintiffs in error in this case are not named in the will of Jacob W. Baker as legatees, nor anywhere designated in said will as beneficiaries of the testator; they are mere 'statute made' legatees, who by force of the provisions of section 5971 take the place of their father and are given what, but for his death, would have gone to him as primary legatee under said will, and as such substituted legatees they must bear the burdens and be subject to the same equities that would have existed against him if he had survived the testator. In other words, in the language of the statute itself, they *'must take in the same manner as he would have done had he survived the testator'.*'' (Italics ours.)

In the case of *Denise's Exrs.* v. *Denise, supra*, at page 168, the court said: ''The statute-made legatee is a mere substitute; he is thrust, by force of the statute, in the place made vacant by the death of the legatee named in the will, and is given what, but for his death, would have gone to the primary legatee. He takes the primary legatee's place, as a beneficiary under the will, and should, according to the ordinary rule prevailing in like cases, bear his burdens, and be subject to the equities which would have existed against him. The statute was designed simply to relieve from a hardship, and should not, by construction, be extended beyond the purpose of its enactment. It is in derogation of the right of testamentary disposition; it makes persons legatees not designated as such by the testator; it is true this is done on the theory which is probably correct in the majority of instances—that if the testator had foreseen the condition of affairs actually existing at the time his will takes effect, he would have made the same persons legatees that the statute makes, but it is very obvious that such a statute should not be enlarged or extended by construction. Statutes must always be construed so as to give effect to the intent and object of the legislature, and this one, I think, must be so read as to cure the mischief it was intended to remedy; that is, it should be held to put the substituted legatee in the place of his parent, and to give him just what his parent would have been entitled to, subject to the same equities that his parent would have been subject

to, and bound by the same rules of justice that his parent would have been bound by. He must *take in the same manner that his parent would have taken."* (Italics ours.)

In the case of *In re Mikkelsen's Estate, supra,* the Supreme Court of Iowa noted the existence of the authorities on which this respondent relies and commented as follows: "We are of the opinion that these authorities give to the statute an effect which the testator, whose purpose should control, and who in most cases is wholly uneducated and uninformed concerning the technical rules and refinements in the laws regulating the testamentary disposition of property and the rules of descent, never intended." It then quoted at length from the Denise case and the Baker case and followed them. Later, in the case entitled *In re Rueschenberg's Estate,* 213 Iowa, 639 [239 N. W. 529], at page 531, the same court said:

"It thus becomes apparent that the heirs of the predeceased son stand in no better position than would the son, had he survived his father, and that they can now take only what their father could have taken had he survived the testator. And since the bequests by the testator to the son could be applied upon the debts of the son to the testator, and which indebtedness is far in excess of the amount of the bequests, the heirs of the predeceased son are entitled to nothing out of the estate. The judgment of the trial court is correct, and the same is hereby affirmed." (See the notes 1 A. L. R. 1038, 30 A. L. R. 781, and 75 A. L. R. 888. See, also, 24 C. J. 487.)

The cases entitled *In re Hafner,* 45 App. Div. 549 [61 N. Y. Supp. 565], and *Jones* v. *Jones' Exr.,* 37 Ala. 646, were based on statutes materially different from our statute. *Wattenbarger* v. *Payne, supra,* rests on a line of reasoning that would entirely ignore the presence in our statute of the last clause, " . . . in the same manner as the devisee or legatee would have done had he survived the testator".

That portion of the decree appealed from is reversed.

Nourse, P. J., and Spence, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 2, 1936.