[Civ. No. 13602. Second Dist., Div. Three. Mar. 29, 1943.]

Estate of EUGENIO ESPOSITO, Deceased. JOSEPH E. ESPOSITO, Appellant, v. GLORIA ELISE RODRI-GUEZ, Contestant and Respondent.

[Civ. No. 13603. Second Dist., Div. Three. Mar. 29, 1943.]

Estate of EUGENIO ESPOSITO, Deceased. STATE OF CALIFORNIA, Appellant, v. JOSEPH E. ESPOSITO et al., Respondents.

Harry Rabwin and Monroe R. Rubin for Joseph E. Esposito.

Robert W. Kenny, Attorney General, and Bayard Rhone, Deputy Attorney General, for State of California.

David Silverton for Gloria Elise Rodriguez.

SHINN, J.—Joseph E. Esposito and Gloria Elise Rodriguez are the children of Eugene Esposito and Estelle Bermudez, who never intermarried. Eugene was the son of Eugenio Esposito, who died leaving a will, which by its terms left all of his estate to his son Eugene, although the latter had predeceased his father.

In a hearing to determine heirship, Joseph and Gloria asserted their respective claims of heirship and interest in the estate under the will of their grandfather. The State of California, by the attorney general, appeared by petition in intervention, contending that Eugenio left no surviving heirs and that his estate was escheated property and distributable as such to the state. By the judgment it was decreed that Joseph and Gloria are "lineal descendants" of Eugene and are entitled to take share and share alike the legacy given to

Eugene by the will of Eugenio. From that judgment the attorney general has taken an appeal. Joseph has appealed from that portion of the judgment which awards one-half of the legacy to Gloria, contending that he is entitled to receive the whole of it. The two appeals will be considered together.

The court found that Eugene publicly acknowledged Joseph and Gloria as his children, received them into his family, otherwise treated them as if they were his legitimate children, and thereby adopted them as such. It was further found that Gloria was legally adopted during her minority by strangers. These findings are not questioned.

Upon the appeal of the state the question is whether the children of Eugene were his lineal descendants within the meaning of section 92 of the Probate Code, which reads as follows: "If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute another in his place; except that when any estate is devised or bequeathed to any kindred of the testator, and the devisee or legatee dies before the testator, leaving lineal descendants, or is dead at the time the will is executed, but leaves lineal descendants surviving the testator, such descendants take the estate so given by the will in the same manner as the devisee or legatee would have done had he survived the testator." The precise question has not been answered in any reported case which has come to our attention. The children were born illegitimate, became legitimate upon adoption by their father, and their parents did not intermarry. Gloria was later adopted by strangers, which fact bears only on the appeal of Joseph. The demand of the state under the law of escheat is predicated upon the single fact that the parents did not intermarry. It is the contention of the attorney general that in the absence of such intermarriage the children were barred from taking the legacy by the provisions of section 255 of the Probate Code, which reads as follows: "Every illegitimate child is an heir of his mother, and also of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father; and inherits his or her estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock; but he does not represent his father or mother by inheriting any part of the estate of the parent's kindred, either lineal or collateral, unless, before his death,

his parents shall have intermarried, and his father, after such marriage, acknowledges him as his child, or adopts him into his family; in which case such child is deemed legitimate for all purposes of succession.''

We cannot agree that this section applies to the case of children claiming a legacy under section 92, *supra*. The children were adopted by their father in accordance with the requirements of section 230 of the Civil Code and, as therein provided, were thereafter deemed *for all purposes* legitimate from the time of their birth. ▆ The rights which a child acquires by adoption are not limited to those which exist only while both parent and child are living, such as the right to parental care and support; the adopted child becomes the child or issue of the adoptive parent and a natural child with respect to its right to inherit from the foster parent. This is by virtue of the adoption and was so recognized before the right to inherit was expressly given by statute. *(In re Newman,* (1888) 75 Cal. 213 [16 P. 887, 7 Am.St.Rep. 146].) ▆ It necessarily follows that as between the child and its parents a child born illegitimate and who is adopted by its father is, at least from the time of its adoption, the child and therefore the lineal descendant of its parents. This much the attorney general concedes, but he says that with relation to the estate of their grandfather, and the bequest in question, these children cannot be considered as the ''lineal descendants'' of their parents because, in the absence of intermarriage, they could not represent their parents for the purpose of inheriting from kindred of the parents. The fundamental error of the argument lies in the assumption that the children are claiming under the laws of succession. They claim under the law relating to wills and independently of the laws of succession.

▆ The scheme of section 92, Probate Code, is founded on blood relationship and belongs to the branch of the law which provides methods which admit of the disposition of estates as they would not go under the laws of succession. Reading the section into the will, as we must *(Estate of Pew,* (1935) 10 Cal.App.2d 41 [50 P.2d 1045] ; *Larrabee* v. *Tracy,* (1940) 39 Cal.App.2d 593 [103 P.2d 61]), we see that the legacy was, in reality, left to the children of Eugene, since he had predeceased his father. It is as if they had been named in the will, provided, of course, they are his lineal descendants, which we cannot doubt. They are the lineal descendants of their parents because they are the offspring

of their parents and it is as such offspring, and not by right of representation or by inheritance, that they qualify to take the legacy. In other words, their right to take the legacy inheres in their status of lineal descendants. It is no more dependent upon the laws of succession than the right of their father would have been if he had survived his father. Also, it must be quite obvious that there is no reason for believing that the term "lineal descendants" as used in section 92 was intended to embrace only those who under the laws of succession may inherit by right of representation.

When we read the provisions of section 255 relating to the status of children of unmarried parents, we find that they place the children Joseph and Gloria in the same position as children adopted by strangers under the general adoption laws, that is to say, they are heirs of the adoptive parents but may not take from kindred of the parents by right of representation. Contrary to the contention of the attorney general it has been held that adopted children may take legacies under section 92 as "lineal descendants" of their adoptive parents, even though they cannot inherit through the parents by right of representation. In *Estate of Moore*, (1935) 7 Cal.App.2d 722 [47 P.2d 533, 48 P.2d 28], and *Estate of Tibbetts*, (1941) 48 Cal.App.2d 177 [119 P.2d 368], it was held that an adopted child is a lineal descendant of its adoptive parents and entitled under section 92 to take a legacy left to a deceased adoptive parent by will of a relative of the latter. In one of these cases the testator was a brother, in the other a sister, of the deceased parent and in neither case was the child an heir of the testator. *(Estate of Pence*, (1931) 117 Cal.App. 323 [4 P.2d 202] ; *Estate of Stewart*, (1939) 30 Cal.App.2d 594 [86 P.2d 1071].) Obviously if the right of the adopted children in those cases to take as lineal descendants of the adoptive parents had depended upon their being able to inherit through the parents by right of representation they could not have qualified to take the legacies. If those cases were correctly decided, as we believe they were, the right to take a legacy under section 92 is entirely independent of a right to inherit through the deceased devisee or legatee.

In view of what we have said as to the inapplicability of section 255 to the facts before us, it is unnecessary to consider whether the section is inapplicable for the additional reason set forth at length in the opinion of the learned Jus-

864

tices of the District Court of Appeal of the First District in *Wolf* v. *Gall*, (1916) 32 Cal.App. 286 [163 P. 346, 350], and the opinion of the Supreme Court in denying a hearing. The decision in that case was given much attention in the briefs herein, and while we have found the discussion to be interesting, there is no occasion for us to consider whether the section is inapplicable for other reasons than the one upon which our decision is based. As against the State of California the children are entitled to the legacy.

 We now consider the appeal of Joseph. The children stood together in resisting the claim of the State, contending that their rights are not controlled by the laws of succession. Joseph upon his appeal claims the entire legacy as against his sister, upon the ground that she lost her legal status as the child of her natural father upon her adoption by strangers; that she thereby ceased to be a lineal descendant of her father and therefore could not share in the legacy. We find this position to be untenable. It is the grandfather's estate that passes under the will and by force of section 92 of the Probate Code, and the will, as we have stated, is to be read as if the grandchildren had been named in the place of their father. Gloria's adoption by strangers severed her legal relationship toward her natural parents and established a new one with the foster parents, but her status as a relative by blood of the kindred of her parents was not altered. In *In re Darling*, (1916) 173 Cal.221 [159 P. 606], the question was whether an adopted child continued to be ''issue'' of his natural father after his adoption by others so as to take a share of the estate of the father of his natural father by right of representation. The court said (p. 225): ''The adoption statutes of this state do not purport to affect the relationship of any person other than that of the parents by blood, the adopting parents, and the child. It is the person adopting and the child who, by the express terms of the section, after adoption 'shall sustain towards each other the legal relation of parent and child and have all the rights and be subject to all the duties of that relation,' and it is the parents by blood who, from the time of the adoption, are 'relieved of all parental duties towards, and all responsibilities for the child so adopted, and have no right over it,' and are, in the eyes of the law, no longer its parents. The adoption simply fixes the *status* of the child as to its former and adopted parents. To its grandparents by blood it continues to be a grandchild, and the child of its parents by blood. It does not acquire new

grandparents in the persons of the father and mother of an adopting parent." And again, at page 227, "It is stated in the note to *Hockaday* v. *Lynn, supra,* 118 Am.St.Rep. 672, 686, that the adoption of a child does not deprive him of his right to inherit from his relatives by blood, unless the statute provides otherwise, and clearly this must be so. Our statute does in effect provide, as we have seen, that he can no longer inherit from his parents by blood, because so far as *they* are concerned he is no longer their child. But his relationship to his grandparents by blood on either side is not affected by the adoption. *As to them* he is, notwithstanding the adoption, the 'issue' or child of their child within the meaning of section 1386 of the Civil Code." In reaching that conclusion the court noted the decision in *In re Newman, supra,* 75 Cal.213 [16 P. 887, 7 Am.St.Rep.146], that an adopted child inherits from and as issue or child of its foster parent, and also the decision in *Estate of Winchester,* (1903) 140 Cal. 468 [74 P.10], that the children of an adopted child take by inheritance from the adopting father as his issue, but in *In re Darling, supra,* the right of the child to inherit through its natural parents was held to continue notwithstanding the newly acquired right of inheritance.

In *Estate of Moore, supra,* 7 Cal.App.2d 722, [47 P.2d 533, 48 P.2d 28], and *Estate of Tibbetts, supra,* 48 Cal.App.2d 117, [119 P.2d 368], as already stated, it was held that an adopted child is a "lineal descendant" of its foster parents within the meaning of section 92, Probate Code. We do not question that this was a logical development of the rule first stated in *In re Newman, supra,* now found in section 257, Probate Code, that a child when adopted acquires the right to inherit from the adoptive parent the same as a natural child. (See, also, *Estate of Mercer,* (1928) 205 Cal. 506 [271 P. 1067].) But it does not follow, because of these privileges conferred by statute upon adopted children as incidents of adoption, that they have ceased to be lineal descendants of their natural parents within the purview of section 92, Probate Code. It has never been held, so far as we are advised, that adoption does more than substitute foster parents for natural parents, without affecting the relationship of the child toward its relatives by blood and without creating new relationships with the kindred of the foster parents. So far as the right of inheritance is concerned, the child does not acquire new brothers and sisters in the persons of the natural children of

the adoptive parents (*Estate of Jones*, (1934) 3 Cal.App.2d 395 [39 P.2d 847]) nor lose the brothers and sisters of its own blood. It remains the child or issue of its natural parents so far as the latter's parents are concerned, as held in *In re Darling, supra*, 173 Cal. 221 [159 P. 606]. If that be true, it must remain the lineal descendant of its natural parents because it cannot, in the absence of a distinction declared by law, be the issue of its natural father and of his father and not their lineal descendant. It is not impossible for an adopted child to be a lineal descendant of two sets of parents for the purpose of taking under a will and by virtue of said section 92. One relationship is natural, the other purely artificial or statutory. The first is not lost because the other is gained, unless the statute so provides (*In re Darling, supra*, and there is no such provision. The statutory law, as we have seen, gives the adopted child new rights of inheritance, although not by right of representation, and takes away its right to inherit from the natural parents but not the right to inherit through them. There is no basis in law or reason for saying that the child is not the lineal descendant of its deceased natural father for the purpose of taking a legacy under section 92, Probate Code.

We conclude that the rights which are granted to testators to dispose of their property, subject to the provisions of section 92, Probate Code, and to lineal descendants of devisees and legatees to take under that section, are not swept away by the adoption of such lineal descendants by strangers; that Gloria Rodriguez after her adoption continued to be a lineal descendant of her natural father within the purview of the section and is entitled to share equally with her brother in the legacy.

The judgment is affirmed.

Desmond, P. J., and Wood (Parker), J., Concurred.

A petition for a rehearing in No. 13602 was denied April 28, 1943, and appellants' petitions for a hearing by the Supreme Court were denied May 27, 1943. Edmonds, J., and Traynor, J., voted for a hearing.