[Civ. No. 16541.   Second Dist., Div. Two.   Dec. 31, 1948.]

Estate of JOHN STEIDL, Deceased.   WILLIAM J. STEIDL et al., Respondents, v. BERNICE FREYGANG et al., Appellants.

Boyle, Bissell & Atwill for Appellants.

Denison & Dietrich for Respondents.

WILSON, J.—Respondent, William J. Steidl, claiming a one-fourteenth interest in the estate of John Steidl, deceased,

filed a petition for a decree determining interests in that estate. To this petition appellants filed their statement of claim of interest and this appeal is from a decree determining that appellants had no interest in the estate and were not entitled to participate in the distribution thereof.

The facts are as follows:

The will of decedent, which has been admitted to probate, was executed on March 14, 1943. By its terms one-half of decedent's estate was disposed of by specific bequests and the only portion of the will which is pertinent to this appeal reads as follows: "I, John Steidl, devise and bequeath to my brothers and sisters, the residue of my estate, to be divided equally between them."

At the time of the execution of the will, decedent had eight living brothers and sisters. On August 4, 1945, one of the brothers, Christian Carl Steidl, died leaving surviving him three adult children, all of whom are now living and are the appellants herein. John Steidl had knowledge of the death of his brother but made no change in his will. He died on March 28, 1947, leaving an estate consisting entirely of separate property.

Appellants contend that under the provisions of section 92 of the Probate Code, as the surviving lineal descendants of Christian Carl Steidl, they are entitled to receive distribution of the share of the residue of the estate to which their father would have been entitled had he survived the testator.

Respondent maintains that since the words of the will exactly describe the objects of the testator's bounty, section 92 does not apply; that the words "my brothers and sisters" are unambiguous and cannot be construed to include nieces and nephews.

Section 92 of the Probate Code reads as follows: "If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute another in his place; except that when any estate is devised or bequeathed to any kindred of the testator, and the devisee or legatee dies before the testator, leaving lineal descendants, or is dead at the time the will is executed, but leaves lineal descendants surviving the testator, such descendants take the estate so given by the will in the same manner as the devisee or legatee would have done had he survived the testator."

It is not open to argument that in construing a will the court must endeavor to ascertain and give effect to the

intention of the testator. (Prob. Code, § 101; *Estate of Clippinger,* 75 Cal.App.2d 426, 429 [171 P.2d 567]; *Estate of O'Brien,* 74 Cal.App.2d 405, 408 [168 P.2d 432]; *Estate of Stevens,* 27 Cal.2d 108, 120 [162 P.2d 918].) It is likewise established that the court is bound to read into the will section 92 of the Probate Code. (*Estate of Pew,* 10 Cal.App. 2d 41, 43 [50 P.2d 1045]; *Larrabee* v. *Tracy,* 39 Cal.App.2d 593, 601 [104 P.2d 61]; *Estate of Tibbetts,* 48 Cal.App.2d 177, 179 [119 P.2d 368].) There can be no question but that the intention of the testator controls but to render the statute inoperative a contrary intent on the part of the testator must be plainly indicated.

In *Estate of Pew, supra,* the court quoted from *Denise's Exrs.* v. *Denise,* 37 N.J.Eq. 163, 168, stating: "The statute-made legatee is a mere substitute; he is thrust, by force of the statute, in the place made vacant by the death of the legatee named in the will, and is given what, but for his death, would have gone to the primary legatee . . . [I]t [the statute] makes persons legatees not designated as such by the testator."

The testator is presumed to know the law and there is nothing in the language of the will before us to indicate an intention that the issue of a deceased brother or sister should not take in the event of the death of any of them before his demise.

The sole question to be determined is whether section 92 of the Probate Code applies to gifts to a class as well as to gifts to individuals who are kindred of the testator.

Respondent asserts that *Estate of Willson,* 171 Cal. 449 [153 P. 927], and *Estate of Watson,* 77 Cal.App. 493 [246 P. 1087], are determinative of the issues before us. In the Willson case the testatrix bequeathed the residue of her estate to the children of her brothers and sisters, whom she named. At the time the will was executed, all her brothers and sisters were dead but there were 10 of their children living. Four of these children predeceased the testatrix leaving issue surviving them, and at the time of testatrix' death six sons and daughters of her deceased brothers and sisters were living. The trial court distributed the estate to the six surviving children of the brothers and sisters. Two of the grandchildren, whose parents predeceased the testatrix, appealed. The case involved two different appeals and although the court cited section 1310 of the Civil Code (upon which the present sec-

tion 92 of the Probate Code is based) in connection with its determination of the first appeal, in which the questions raised are not pertinent to the instant case, no mention was made of that section with respect to the second appeal. The court stated that the point involved in the interpretation of the will was whether the word "children" as used in certain clauses of the document could be construed to include "grand-children." After discussing the two classes of cases in which the word children in a will has been held to include grand-children, being limited to cases where there is an ambiguity, the court held that there was nothing in the context of that will to throw doubt upon the meaning of the word children and the decision of the lower court was affirmed. Although the effect of this decision was to exclude the children of a deceased member of a class, the specific problem is not mentioned and the decision rests entirely upon an interpretation of the will and of the testatrix' intention. There is nothing in the opinion to indicate that the court considered the application of section 1310 of the Civil Code in connection with gifts to a class.

In the Watson case the testatrix directed that the residue of her estate be divided equally among her nieces and nephews. At the time the will was executed, one of her nieces had been dead for 16 years, leaving children surviving her, two of whom outlived the testatrix. The court considered the application of section 1310 of the Civil Code and recognized that the question is one in which the various jurisdictions do not agree. However, it stated that the appeal presented but one point and that was whether grandnieces were included as beneficiaries and decided that it was bound by the decision in the *Estate of Willson, supra,* holding that the children of the deceased niece were not entitled to the share which their mother would have inherited if living.

The other California cases cited by respondent are readily distinguishable. In *Estate of Vizelich,* 129 Cal.App. 347 [18 P.2d 773], the will provided "in the case of the death without issue of any of my said sons and daughters and grand-children herein mentioned, their share . . . *shall go to my surviving children.''* The court stated that it was obvious that the testatrix "desired the share of any of her children or grandchildren who might die without issue, to go to her surviving children, and as a precaution against uncertainty in that classification she added, 'that is to say, to my sons and daughters herein named,' '' At the time of her death

there were six sons and daughters. Three died prior to the filing of the decree of distribution one of whom, Amelia, left two children surviving her and one of whom, Stanley, died six months after Amelia leaving no issue. The court held that "death without issue" referred to the period subsequent to the death of testatrix and applied only until the date of final decree of distribution. The share of the son dying without issue vested in the three surviving children of testatrix and the children of Amelia had no interest therein.

In *Estate of Rounds,* 180 Cal. 386 [181 P. 638], the bequest was "to each of my sisters and brothers living." The court held that it was not the intention of the testatrix to use the word "living" as of the date of the execution of the will and the word related to the time of her death; that the gift was to her sisters and brothers living at the date of her death. *Estate of Hittell,* 141 Cal. 432 [75 P. 53], is not in point. The testator left his estate to two named persons, neither of whom was related to him. Section 92 was therefore not applicable. *Estate of Sullivan,* 31 Cal.App.2d 527 [88 P.2d 225], is likewise not in point. The devise in the will was to four named brothers and sisters individually and was not to a class. Furthermore, section 92 was held to apply.

Most of the states have passed so-called "anti-lapse" statutes, the general provisions of which are similar to those of section 92. There is a conflict of authority as to whether or not these statutes apply to gifts to a class. As stated in Page on Wills, Lifetime Edition, volume 3, section 1062, page 253, the conflict is caused principally by the different views taken by the courts as to the purpose of the Legislature in enacting the statutes and as to the general theory underlying them. Those courts which are of the opinion that the statutes are intended to protect the issue of members who die before the testator, if within the specified relationship, hold that the statutes apply to gifts to a class, whereas those courts which take the view that the statutes are intended only to prevent lapse where the gift would have failed at common law, hold that the statutes do not apply to class gifts since such gifts would not have lapsed by reason of the death of one of its members. ■ By the weight of authority, however, these statutes are held to apply to gifts to a class and upon the death of one of the members of the class, after the will is made and before the testator dies, his issue take the share he would have taken had he survived until the time arrived for fixing the class.

The courts in some 15 states have adopted the view that these statutes do apply to gifts to a class when the beneficiary dies after the will is made but predeceases the testator. (*Clifford* v. *Cronin,* 97 Conn. 434 [117 A. 489]; *Rudolph* v. *Rudolph,* 207 Ill. 266 [69 N.E. 834, 99 Am.St.Rep. 211]; *In re Nicholson's Will,* 115 Iowa 493 [88 N.W. 1064, 91 Am.St.Rep. 175]; *Bray* v. *Pullen,* 84 Me. 185 [24 A. 811]; *Galloupe* v. *Blake,* 248 Mass. 196 [142 N.E. 818]; *Strong* v. *Smith,* 84 Mich. 567 [48 N.W. 183]; *Murphy* v. *Enright,* (Mo.) 264 S.W. 811; *In re Kittson's Estate,* 177 Minn. 469 [225 N.W. 439]; *Benton* v. *Benton,* 66 N.H. 169 [20 A. 365]; *Edgerly* v. *Barker,* 66 N.H. 434 [31 A. 900, 28 L.R.A. 328]; *In re Mott's Estate,* 137 Misc. 99 [244 N.Y.S. 187]; *Woolley* v. *Paxson,* 46 Ohio 307 [24 N.E. 599]; *In re Bradley's Estate,* 166 Pa. 300 [31 A. 96]; *Moore* v. *Dimond,* 5 R.I. 121; *Jones* v. *Hunt,* 96 Tenn. 369 [34 S.W. 693]; *Burch* v. *McMillin,* (Tex.Civ.App.) 15 S.W.2d 86.) England and the courts of four states have taken the opposite view. (*In re Harvey's Estate,* (Eng.) 1 Ch. 567; *Toucher* v. *Hawkins,* 158 Ga. 482 [123 S.E. 618]; *Stahl* v. *Emery,* 147 Md. 123 [127 A. 760]; *Dillard* v. *Dillard,* (S.C.) 80 S.E. 849; *Trenton Trust & Safe-Deposit Co.* v. *Sibbits,* 62 N.J.Eq. 131 [49 A. 530].) Some of the courts have gone so far as to construe the statute as applying to gifts to a class where the member of the class had died before the will was made. This, however, is the minority view.

The Restatement of the Law of Property, volume III, section 298, page 1621, sets forth the rule as follows: "When a 'possible taker' under the terms of a testamentary limitation in favor of a class described as 'children,' 'grandchildren,' 'brothers,' 'sisters,' 'nephews,' 'nieces,' 'cousins,' 'issue,' 'descendants,' or 'family' of a designated person dies before the testator, and a statute exists providing for substituted takers of the subject matter of a devise made to an individual devisee who predeceases his testator, and all requirements for the applicability of such statute, except that the testamentary limitation is in favor of a class rather than an individual, are satisfied, then such statute applies also to this testamentary limitation in favor of a class and makes its specified substitution with respect to the share of any 'possible taker' thereunder (a) who dies after the execution of the will, unless a contrary intent of the testator is found from additional language or circumstances; . . ."

The precise question not having been decided in this state, a review of the decisions in other jurisdictions, both the majority and the minority groups, impels us to the conclusion that the correct view is that followed by the weight of authority in the construction given to similar statutes in other states. We are in accord with the reasoning and the conclusion stated in *Woolley* v. *Paxson, supra,* (24 N.E. 599 at p. 600) ''The rule as to the lapsing of devises and legacies that prevailed before the statute defeated, in most cases, the intention of the testator. He generally made his will with reference to the objects of his bounty as they existed at the time, and as though his will took effect at the date of its execution, not apprehending that a lapse would occur in case any of them should die before himself, unless some express disposition should be made in anticipation of such event. The statute was passed to remedy such disappointments, and should receive a liberal construction, so as to advance the remedy and suppress the mischief. It, among other things, provides that, where a devise is made to a child or other relative of the testator who dies before the testator, the issue of such object of his bounty shall take the portion devised to such child or relative. Nothing is more just and conformable to the probable intention of the testator in every instance . . . [I]t was not designed to prevent the failure of a legacy by the death of the legatee before the testator,—that were impossible,—but to make a new disposition by law of such legacy, where the testator had himself failed to do so, in anticipation of the possible death of any one of the chosen objects of his bounty before himself, where such object was a child or other relative of his.''

In *Mott's Estate, supra*, the court said the statute was not solely for the purpose of preventing intestacy but was enacted to substitute descendants of a deceased legatee, since experience has shown that by reason of neglect and failure to anticipate the death of the primary legatee before the death of the testator the latter often failed to provide for such contingency. The decision in *Mott's Estate* has been followed in *O'Neil's Estate,* 174 Misc. 213 [20 N.Y.S.2d 430]. A technical construction will defeat the object of the statute and will result in a discrimination against the descendants of one member of a class in favor of the descendants of another. Such discrimination should not be permitted unless it is manifest that such was the testator's intention. (*O'Neil's Estate,*

*supra.*) Such statutes are remedial and should receive a liberal construction. The testator is presumed to know the law and it will be presumed that his will was drawn accordingly. (*Clifford* v. *Cronin,* 97 Conn. 434 [117 A. 489, 490].)

Respondent also cites several New York cases which he contends do not follow the decision in *Mott's Estate, supra,* and *O'Neil's Estate, supra.* Some of these cases may be distinguished on their facts, since the court held under the particular facts presented the anti-lapse statute would not be applicable, there being evidence of a contrary intent on the part of the testator. Moreover, since the overwhelming majority of courts hold that the anti-lapse statutes are applicable to gifts to a class, the seeming division of opinion in the courts of New York is immaterial.

We find nothing in section 123 of the Probate Code which would conflict with such a construction of section 92. Furthermore, the answer to the contention that a conflict between the two sections can be found is answered by the rule that in case of a conflict between two statutes the court should harmonize them if possible by giving them such a construction as will render both effective. (*County of Los Angeles* v. *Craig,* 52 Cal.App.2d 450, 452 [126 P.2d 448].)

The judgment is reversed with directions to make findings and render judgment that appellants are entitled to distribution of the share of decedent's estate which their deceased father would have received had he survived the decedent and otherwise in accordance with this opinion.

Moore, P. J., and McComb, J., concurred.