[Civ. No. 10994.   First Appellate District, Division Two.—February 21, 1939.]

In the Matter of the Estate of ARMANDO GRAZZINI, Deceased.   GINA ANTONGIOVANNI et al., Appellants, v. CAROLINA GRAZZINI et al., Respondents.

John J. Mazza and Kenneth J. Carey for Appellants.

Edmund Scott for Respondents.

NOURSE, P. J.—Armando Grazzini died testate April 22, 1937, leaving a mother, a sister, and two daughters by adoption. His last will left all his property to the mother and sister, and failed to mention the adopted daughters. The sister filed the will for probate and asked for letters. The older daughter filed an opposition to the petition, a contest of the will, and a petition asking that letters be granted her as administratrix with the will annexed. A demurrer to her contest was sustained. The two petitions for letters were heard

at the same time and letters were ordered issued to the sister of deceased and denied to appellant. The daughter appearing for herself, and as guardian of her minor sister, has appealed from these portions of the order.

The appellant now concedes, on the authority of *Estate of Sankey,* 199 Cal. 391, 405 [249 Pac. 517], that as a pretermitted heir, she has no right to contest the will upon that ground, but that as to her and her sister there is in contemplation of law no will because of such pretermission. There is left for decision two questions of law—may the order of adoption be collaterally attacked in these proceedings, and is appellant entitled to letters as an heir at law.

■ When the order of adoption was offered by appellant the trial court refused to admit it upon the ground that it was void upon its face. This was error. The ruling was based upon the highly technical conception that the order of adoption showed lack of jurisdiction because of the recital that the consent of the natural father was not necessary because of his "abandonment of said minor children without provision for *their* identification". Section 224 of the Civil Code, as it read when the order of adoption was made in March, 1926, provided that the consent of the parents of a legitimate child was not necessary (subd. 5). "From a father or mother of any child deserted by its parents without provision for *their* identification." Respondents argue that the section makes it unnecessary to have the consent of the parents only where both have deserted the child without provision for the identification of the *parents* and that, since in the case at hand, the mother was dead, the recital in the order means that the father had not made provision for the identification of the *children* and thus the order shows lack of jurisdiction.

This position cannot be sustained for these reasons—the use of the word "their" was clearly a clerical error which was corrected at the 1927 session of the legislature. This portion of the section was then made to read "where *the* father or mother of any child has deserted the child without provision for *its* identification". Thus the section was made to read that if one of the parents deserted a child without provision for identification, the consent of that parent only was dispensed with, whereas, the old section was open to the interpretation that a child must be deserted by "its parents"

without provision for the identification of both. If such was the interpretation placed upon the old section by the court below, it was entirely too narrow and technical. The court in the adoption proceedings found that the mother of the children was dead and to now hold that her consent was nevertheless necessary unless she was also found to have failed to make provision for her identification after death would be absurd.

But for another reason the ruling may not be sustained. The requirement that the parents make provision for "identification" means this and nothing more—that they make provision so that they may be identified as the parents of the minor and that the minor may be identified as their child. This is in accord with the rule of "reasonable" interpretation which so many cases have held to be our guide. Hence, the difference between "their" and "its" is like tweedledum and tweedledee.

■ It should be noted that the adoption statutes do not require that the jurisdictional facts be stated in the order of adoption. These proceedings are initiated by petition filed in the superior court, which is a court of general jurisdiction. The judgment or order of adoption is entitled to all the presumptions which attach to any other judgment of such courts. (*Burris* v. *Kennedy,* 108 Cal. 331, 338 [41 Pac. 458] ; *In re Williams,* 102 Cal. 70, 77 [36 Pac. 407, 41 Am. St. Rep. 163] ; *Estate of McKeag,* 141 Cal. 403, 408 [74 Pac. 1039, 99 Am. St. Rep. 80] ; *In re Campbell,* 9 Cal. App. (2d) 622, 623 [51 Pac. (2d) 138] ; 1 Am. Jur., p. 636.) The reason for this holding is frequently based upon the grounds stated in *In re Campbell, supra,* that findings had been waived which, if made, would have covered every objection raised. Here findings might have been made covering these points, which findings would have been available on a direct attack. Then, again, in the absence of findings proof might be made in a direct attack upon the order that all these jurisdictional facts were presented to the court and proved in the original proceeding. (*In re Williams, supra.*) All these considerations have moved the courts of this jurisdiction to disregard the antiquated rule that proceedings in adoption are to be strictly construed because they were not known to the ancient common law. In harmony with section 4 of the Code of Civil Procedure we have chosen the more reasonable rule

of liberal construction so well stated in 1 American Jurisprudence, p. 636, and have fortified that rule by invoking the doctrine of estoppel against the adopting parent and those who would claim under him. This is well stated in *Estate of McKeag, supra,* at page 411: ''Nearly nine years after the decree was entered, and more than one year after the death of her adopted father, his administrator and collateral heirs come into court and ask that this decree of adoption be vacated. They are not here in the interest or on behalf of the innocent subject of adoption, but decidedly against the same. They are either strangers to the adoption, and therefore, have no standing in court, or they are privies in blood, or in law, and stand in the shoes of Samuel Sankey, through and under whom they claim. Surely, Samuel Sankey, if living, could not be heard in this court questioning its decree made at his solicitation. He invoked the jurisdicton of the court; he asked that the decree of adoption should be made; he got what he desired; and he should not now be allowed to question the means he set in motion. If any wrong was done, Samuel Sankey did it, and neither he nor those who claim under him can be permitted to take advantage of his wrong to the prejudice of an innocent party.''

Here it should be noted that eleven years elapsed from the time of the adoption until the attack was made—not by the adopting parent, but by those claiming under him. If this had been a direct attack upon the order of adoption the defense of estoppel would have been available to the minors and they could also have made proof in support of the order. Clearly linked with this doctrine is the salutary rule adopted in many jurisdictions that where the only objection to adoption proceedings is the question of consent of the natural parent, he alone may attack the proceedings on that ground and the decree is valid as to all others. (1 Am. Jur., p. 642.) These are sufficient reasons for denying to respondents the right to make this collateral attack upon the order.

The second ground urged by appellant requires little discussion, since the rights of the parties are governed by express statutes. An adopted child succeeds the same as a natural child. (Prob. Code, sec. 257.) When a child is not provided for by will, or by settlement, such child succeeds to the same share as if the testator had died intestate. (Prob. Code, sec. 90.) The adopted children, being entitled to

succeed to the entire estate, are entitled to testamentary letters in preference to the sister of deceased, who does not succeed to any portion of the estate. (Prob. Code, secs. 422, 409.) For these reasons the appellant Gina Antongiovanni is entitled to letters with the will annexed. In reaching this conclusion we are in accord with the ruling of the trial court that the unsigned note is no part of the will, as is clearly disclosed on the face of the paper.

The portions of the order appealed from heretofore noted are reversed. The appellants should have their costs.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 23, 1939, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 20, 1939.