[Civ. No. 11950. First Dist., Div. One. Apr. 1, 1942.]

Estate of C. F. SUMMERS, Deceased. JAMES L. TREAD-WELL, Appellant, v. CHARLIE Y. WOODS, Respondent.

John J. Taaffe and Joseph C. Haughey for Appellant.

J. A. Kennedy, Raymond Salisbury and Joseph C. Prior for Respondent.

KNIGHT, J.—Calvin F. Summers died intestate on March 7, 1939, at the age of about 85 years, leaving an estate of considerable value, consisting chiefly of a bank deposit and mining property. He was a widower, and was not survived by any children, brothers or sisters. Four separate petitions for letters of administration were filed; one by Charlie Y. Woods, claiming to be the decedent's grandson, and another by James L. Treadwell, who was admittedly a grand-nephew. The probate court granted Woods' petition and denied the others; and Treadwell alone has appealed. It is conceded that by

virtue of section 422 of the Probate Code a grandson's right to administer an estate is prior to that of a grand-nephew; but whether or not Woods was a grandson depended upon the determination of the question of whether, as claimed by him, his mother, Bertha Lois Summers, was the legally adopted daughter of the decedent. In this regard respondent claimed that the adoption proceeding took place in the Superior Court in and for the City and County of San Francisco about the year 1881; and at the hearing of the present proceeding it was stipulated that if any records of such adoption proceeding ever existed they were destroyed in the San Francisco fire of 1906. The probate court found in favor of the respondent on the adoption issue, and appellant attacks the finding upon the ground that the evidence is insufficient as a matter of law to sustain said finding.

In order to pass upon the correctness of the probate court's finding it becomes necessary to consider the evidence adduced at the hearing relating to the family history and the background of the parties. It appears therefrom that Isabel Mather Henderson and John Wilson Henderson, husband and wife, had two children, Bertha Lois (respondent's mother) and Isabel (known generally as "Belle"). In 1875 Mrs. Henderson obtained a divorce from her husband on the ground of extreme cruelty, and was awarded the custody of the children, who were then 4 and 8 years of age respectively. The children, however, remained living with their father, and Mrs. Henderson, who was then in her early thirties, took a position as governess for the children of Mrs. Mabel Summers Treadwell, wife of James Parker Treadwell Sr. and sister of Calvin F. Summers. Calvin at that time was about 19 years old, and lived with his sister at 16 Shephard Place, San Francisco. In 1877 he and Mrs. Isabel Henderson were married, and continued to live with Calvin's sister at 16 Shephard Place. In 1881 Bertha Lois and Belle, the Henderson children, went to live with their mother and Calvin Summers, and it was during that year that it is claimed the court proceedings took place whereby Calvin F. Summers legally adopted Bertha Lois.

Belle did not get along well with Summers, and a short time after the adoption of Bertha Lois, Belle went back to live with her father. Bertha Lois continued to live with Summers and her mother until about 1888, part of the time on Haight Street. She attended the College of Holy Names in Oakland during 1887, using the name "Lois Somers." (The name Sum-

mers was sometimes spelled Sumers and also Somers.) In 1893 Bertha Lois bore an illegitimate daughter, who died in 1934, leaving surviving her two daughters who were named as heirs of Calvin F. Summers in respondent's petition. Also in 1893 Bertha Lois married Albert S. Woods. They had two children, the respondent Charlie Y. Woods and his brother Eugene (Gene) B. Woods. Bertha Lois divorced Woods in 1911 and subsequently married Charles Howard, but had no children by him; and she died in 1927.

The main evidence relating to the adoption proceeding and the circumstances attending it consisted of the testimony given by Belle Henderson, the surviving sister of respondent's mother, Bertha Lois. At the time of the hearing of the present proceeding Belle (or Isabel) Henderson was married, and upon being sworn as a witness gave the name "Isabel Bryan." She testified that she was present in court at the time the adoption took place. In this regard she stated, in part, that about 1881 she and her sister Bertha Lois went to live with Summers and their mother at 16 Shephard Place in San Francisco—they had been living with their father up to that time; that in the presence of her sister, her mother and herself Summers said he wished to adopt her sister, that she was a very bright girl and he would be able to give her advantages that her father could not; that at that time the witness was between 12 and 13 years old, and her sister between 8 and 9. Continuing, she testified that about a month after the above discussion Summers, his wife and the two girls "went to the court out in the City Hall" and went into the courtroom and sat down, and her mother was introduced to the judge, Judge Halsey; that her mother and Summers were sworn to tell the truth, and Summers handed the judge some papers and said this was the little girl he wished to adopt; that the judge read the papers, and then asked her mother if she was willing for Summers to adopt the child and she said yes; that her mother and Summers then signed the paper, after which the judge wrote something on the paper himself; that then the judge said to Bertha, "Bertha, now you have a new father" and he hoped she would be very happy in her new surroundings. Continuing her narrative, Mrs. Bryan testified that she remained with her mother and Summers for about a year; but that Summers was not kind to her, so she told him she was going back to her father, and he replied, "Go ahead, but your sister can't go, she belongs to me. I

have adopted her''; that after she went back to live with her father, Bertha's adoption was discussed many times, and that her father was quite hurt that Bertha had chosen to live with Summers. She also testified that after the court proceedings her sister used the name Lois Summers and never again used the name Henderson, and that she continued to live with Summers "till she was grown." She also testified that she had a copy of the divorce decree between her mother and her father up to 1939; that she knew from that document that they were divorced in San Francisco; that the grounds were extreme cruelty, and that the custody of the two children was given to the mother.

Considerable corroborative testimony was introduced. In part it consisted of the following: Albert S. Woods, husband of Bertha Lois and father of respondent, testified that Henderson, his wife's natural father, told him Bertha Lois had been adopted by Summers; and he testified that sometime prior to their marriage he and Bertha met Summers on Kearney Street and Bertha said, "There comes my father," and introduced Summers as her father; that about a week or two prior to their marriage he had a conversation with Summers; that Bertha told Summers they were going to get married and Summers inquired if Woods was working and what his salary was; that Summers said, "Well, now, she is my daughter, I adopted this girl, I am interested in her and I want you to take good care of her . . ." Furthermore, various other witnesses testified to admissions made in their presence, by Summers and Bertha Lois' mother, that Summers had adopted Bertha Lois as his child; and the registration books of the convent she attended in 1887-8 were introduced in evidence, showing she was registered there under the name "Lois Somers." There was no contradictory testimony introduced in behalf of appellant, nor on this appeal does he challenge the truth of any of the statements made by any of respondent's witnesses.

The sections of the Civil Code effective at the time it is claimed the adoption proceedings herein took place provided that the person adopting must be at least 10 years older than the person adopted (sec. 222); that a married man not lawfully separated from his wife cannot adopt a child without the consent of his wife (sec. 223); that a legitimate child cannot be adopted without the consent of its parents, if living, except that the consent is not necessary from a father adjudged

guilty of cruelty and for that cause divorced (sec. 224); that the consent of a child if over the age of 12 years is necessary to its adoption (sec. 225); that the person adopting and the child adopted and the other persons, if within or residents of this state, whose consent is necessary, must appear before the judge of the superior court of the county wherein the person adopting resides and the necessary consent must thereupon be signed and the agreement be executed by the person adopting, to the effect that the child shall be adopted and treated in all respects as his own lawful child should be treated (sec. 226); that the judge must examine all persons appearing before him separately and if satisfied that the interests of the child will be promoted by the adoption, he shall make the order accordingly (sec. 227).

In the *Estate of Johnson*, 98 Cal. 531 [33 Pac. 460, 21 L. R. A. 380], the Supreme Court had occasion to review the foregoing code sections, and in doing so it said in part: "The right of one person to legally adopt the offspring of another, and thus to create between the person adopting and the child adopted the relation of parent and child, giving to the child all the rights and subjecting it to all the duties of that relation, was unknown to the common law, and exists in this state as a pure creation of statute law; and, in order to effect such adoption, it is necessary that there should be a substantial compliance with all of the essential requirements of the law under which the right is claimed; but, in determining what provisions of the law are essential and therefore mandatory, the statute is to receive a sensible construction, and its intention is to be ascertained, not from the literal meaning of any particular word or single section, but from a consideration of the entire statute, its spirit and purpose." And later on the court said: "The adoption of a child under the section[s] of the Civil Code above cited is not a judicial proceeding (*In re Stevens*, 83 Cal. 322 [23 Pac. 379, 17 Am. St. Rep. 252]), although the sanction of a judicial officer is required for its consummation. The proceeding is essentially one of contract between the parties whose consent is required. It is a contract of a very solemn nature, and for this reason the law has wisely thrown around its creation certain safeguards, by requiring, not only that it shall be entered into in the presence of a judge, but also that it shall receive his sanction, which is not to be given until he has satisfied himself of these three things: 1. That the person adopting is ten

years older than the child. 2. That all the parties whose consent is required do consent, fully and freely, to the making of such contract. 3. That the adoption contemplated by the contract will be for the best interest of the child adopted.''

In the present case the probate court accepted as true all of the testimony given by Mrs. Bryan; and it is our conclusion that it was justified in finding therefrom that all necessary jurisdictional and statutory requirements to establish a valid adoption had been satisfied. Summarized, the undisputed facts appearing therefrom are that the child was less than 12 years of age, and that Summers was more than 10 years older than the child; that the consent of the natural father of the child was not essential because of the decree of divorce; that the sole purpose in going before the judge of the court was to accomplish the act of adoption; that Summers and his wife were sworn as witnesses; that they were examined separately, and that consent to the adoption was fully given by Summers and his wife (the natural mother of the child) ; that Summers handed the judge some papers which were read by the judge and signed by Summers and his wife, and that thereafter the judge wrote something on the paper himself; whereupon the judge stated to Bertha, ''. . . now you have a new father''; and bearing in mind the nature of the requirements of said sections 226 and 227, the only reasonable inference to be drawn from the evidence is that the paper Summers handed to the judge and which Summers and his wife signed was the agreement to adopt, and that the paper signed by the judge was the order of adoption.

Appellant contends in effect, however, that in a case such as this where it is claimed that the record of the adoption has been destroyed, the fact of the adoption can be legally established only as provided by section 1855 of the Code of Civil Procedure, that is, either by the production of a copy of the original record, or by the testimony of one who has actually read the documents constituting the adoption record and can relate the substance of their contents by virtue of having read them; and in support of such contention he relies mainly upon the *Estate of Sharon,* 179 Cal. 447 [177 Pac. 283]. While a portion of the opinion therein was devoted to a discussion of the failure to produce any witness who had actually read the adoption papers which the appellant therein claimed had been destroyed by the San Francisco fire of 1906, an examination of the entire decision discloses that there were

additional grounds upon which the court largely based its conclusion that no adoption had been established. One was a fatal defect in the proof in that there was a failure to prove the jurisdictional requirements demanded by sections 225 and 223. In this regard the court said: "The appellant admitted that he was over twelve years of age at the time and he did not testify that he signed a consent to the adoption and produced no evidence to that effect. The wife of the decedent was capable of consenting, was not separated from her husband, was then in California, and she did not sign a consent thereto. It follows that even if the judge did make an order, as claimed, it was wholly void." There are no such defects in the proof in the present case. Another ground was that the evidence affirmatively established that the child was not supported by the alleged adopting parent nor treated as his own child. On this point the court said: "The appellant was kept in a boarding-school for about four years thereafter and supported for some six months longer in Arizona, where he was sent because he was afflicted with tuberculosis. The appellant contends that his expenses during all this period were paid by the decedent. But the evidence is almost conclusive that the expenses were paid out of the funds belonging to the Sharon trust above mentioned, and charged to all the beneficiaries. At all events it comes far short of proving that the decedent, after the alleged adoption, regarded and treated the appellant as his own child should have been treated. He did not treat him as he treated his own child, then living. He never took the appellant into his family, nor associated with him in any way, and in fact he never thereafter spoke to the appellant or communicated with him in any manner whatever. As corroboration of the fact of a valid adoption, the evidence could not well have been weaker without being absolutely immaterial and irrelevant." Here the evidence shows without dispute that the child was supported by the adopting parent and treated as his own child. Since, therefore, the two cases are essentially different in the matter of proof, we do not deem the decision in the *Estate of Sharon* as here controlling.

Appellant also emphasizes the *Estate of McCombs,* 174 Cal. 211 [162 Pac. 897], but there the probate court found against the claimant on the determinative question of fact and the Supreme Court declined to disturb the finding. Stated more precisely, the determinative question of fact there was whether in conformity with the law of the State of New York in force

in 1887 a written instrument of adoption had ever been entered into between an orphanage and Mr. and Mrs. George W. McCombs for the adoption of the contestant and appellant therein, Helen McCombs Fairchild; and apparently the probate court was not convinced by the evidence produced that such an agreement had been executed, because it found that the claimant was not the legally adopted daughter. Here the probate court found in favor of the claimant on the determinative issue of fact, and as above stated, it is our opinion that the evidence is legally sufficient to sustain its finding. Moreover, in the McCombs case, it appears that there was no proof that the child was placed in the orphanage under such circumstances as gave the officers of that institution power to enter into a contract for its adoption.

A casual inspection of *Estate of Guinasso,* 13 Cal. App. 518 [110 Pac. 335], stressed by appellant, shows that it is not at all in point. There an attempt was made to probate a destroyed will, and the proceeding was governed by a code section enacted for the sole purpose of taking care of such cases, to wit, section 1339 of the Code of Civil Procedure, as it stood at that time.

Several other cases have been cited by appellant, but no useful purpose could be served by giving each of them special attention, because none of them dealt with a factual situation similar to the one here presented. Nearly all of them involved direct attacks by the natural parents upon the validity of existing adoption proceedings; and the decisions on appeal simply restated the general doctrine applicable to such cases, that the one claiming a valid adoption must show that there has been a compliance with every essential statutory requirement. There is nothing in the decision of the probate court in the present case, nor in our disposal of the appeal from that decision, which can be said to conflict with such general doctrine.

The order is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 28, 1942.