[L. A. No. 22987. In Bank. Apr. 26, 1955.]

Estate of GEORGE A. CALHOUN, Deceased. DAISY OREB, as Administratrix, etc., Appellant, v. WALTER WILLIAM PETTIT, Respondent.

Charles C. Morrison for Appellant.

Richard McLeod for Respondent.

Louis Thomsen as Amicus Curiae on behalf of Respondent.

EDMONDS, J.—Letters of administration in the estate of George A. Calhoun were issued to Daisy Oreb, the natural daughter of Calhoun's adoptive parents. Her appeal from an order revoking those letters and appointing Walter William Pettit, a natural brother of the decedent, as administrator, presents for determination the conflicting claims of Mrs. Oreb and the blood relatives of Calhoun to the right to succeed to his estate.

These facts are stipulated:

George was the youngest of four children born to William and Anna Fortna. Each of the children, when less than 4 years old, was adopted into a different family. Elder sisters, Leona and Ruth, were taken into families whose identities are not shown by the record. His brother, James William, in 1913 at the age of 2 years was adopted by the Pettit family and given the name of Walter William. In 1917, when 4 years old, George was adopted by Ezra and Victoria Calhoun, who had an older daughter, Daisy.

The decedent's estate consists entirely of his share of the estate of Victoria Calhoun, his adoptive mother, who predeceased him by about two years. Surviving him were Daisy Oreb, Walter Pettit, his natural sister Ruth Rice, and the issue of his deceased sister, Leona. Both his natural parents and adoptive parents predeceased him. There are no other surviving relatives.

Mrs. Oreb petitioned for letters of administration upon the ground that she is the decedent's sister. Section 422 of the Probate Code,[1] which specifies the persons entitled

---

[1] "Administration of the estate of a person dying intestate must be granted to one or more of the following persons, who are entitled to letters in the following order, the relatives of the decedent being en-

to have letters issued, includes "brothers and sisters." (Subd. (5).) Although that subdivision has not been construed in connection with the question as to whether foster brothers and sisters are included within it, the terms used to designate other relationships have been deemed sufficiently broad to include those resulting from adoption. (*Cf. Estate of Camp,* 131 Cal. 469, 470 [63 P. 736, 82 Am.St.Rep. 371] [child]; *Estate of Mercer,* 205 Cal. 506, 507 [271 P. 1067] [issue of predeceased spouse]; *Estate of Grazzini,* 31 Cal.App.2d 168, 172-173 [87 P.2d 713] [children]; *Estate of Summers,* 51 Cal. App.2d 39, 40 [124 P.2d 94] [grandchild].) For the purposes of the present case, it may be assumed that a foster sister, if otherwise qualified, may claim the right to letters of administration.

According to section 422, a relative may claim priority to letters of administration only when he is entitled to succeed to the decedent's estate or to some portion of it. This requirement is in addition to his other qualifications. (*Estate of Sayers,* 203 Cal. 753, 756 [265 P. 924]; *cf. Estate of Herriott,* 219 Cal. 529, 531 [28 P.2d 355].) As the parties agree, the controlling issue is whether Calhoun's natural brother or his foster sister is entitled to succeed to his estate.

Rights of inheritance, as well as the subject of adoption and the rights and obligations resulting from it, are entirely matters of statutory regulation. (*Estate of Jobson,* 164 Cal. 312, 315 [128 P. 938, 43 L.R.A.N.S. 1062]; *In re Darling,* 173 Cal. 221, 223 [159 P. 606].) Necessarily, the claim of each of the parties to the right to share in Calhoun's estate depends upon the effect to be given to section 225 of the Probate Code, which provides: "If the decedent leaves neither issue nor spouse, the estate goes to his parents in equal shares, . . . or if both are dead in equal shares to his

titled to priority only when they are entitled to succeed to the estate or some portion thereof:

"(1) The surviving spouse, or some competent person whom he or she may request to have appointed.
"(2) The children.
"(3) The grandchildren.
"(4) The parents.
"(5) The brothers and sisters.
"(6) The next of kin entitled to share in the estate.
"(7) The relatives of a previously deceased spouse, when such relatives are entitled to succeed to some portion of the estate.
"(8) The public administrator.
"(9) The creditors.
"(10) Any person legally competent."

brothers and sisters and to the descendants of deceased brothers and sisters by right of representation."

Mrs. Oreb's position is that the words "brothers and sisters" must be read as referring to the relationships resulting from the decedent's adoption, and as excluding his natural brothers and sisters. She contends that adoption effects a complete change in the child's status, terminating the right of his natural relatives to inherit from him and substituting as heirs his adoptive relatives. A somewhat different theory is that she is entitled to succeed to Calhoun's estate as the issue of her deceased parents. Pettit argues that an adoption affects the right of inheritance only between the child and his natural parents and between him and his adoptive parents.

The earliest California statute regulating adoption made specific provision as to its effect upon inheritance. It declared in part: "A minor, when adopted, shall be entitled to the name of the party adopting, and the two thenceforth shall bear towards each other the legal relation of parent and child, and the minor shall enjoy all the legal rights and subject to all the duties appertaining to that relation; except, however, that if the adopted child leaves descendants, ascendants, brothers or sisters, the party adopting, nor his relatives, shall not inherit the estate of the adopted child . . .." (Stats. 1869-1870, p. 530, 531.) When the Civil Code was enacted, a similar provision was included in it. However, that statute omitted the clause in regard to inheritance. It read: "A child, when adopted, takes the name of the person adopting, and the two thenceforth sustain towards each other the legal relation of parent and child, and have all the right and are subject to all the duties of that relation." (§ 228.) Minor changes in wording were made the following year, and as so revised the section has remained unchanged until the present time. (Amendments to the Codes, 1873-1874, p. 195.)

Other sections of the Civil Code enacted at the same time included 227, which provided that upon adoption the judge should "make an order declaring that the child shall thenceforth be regarded and treated in all respects as the child of the person adopting" and section 229 which declares: "The parents of an adopted child are, from the time of adoption, relieved of all parental duties towards, and all responsibility for, the child so adopted, and have no right over it."

*In re Newman*, 75 Cal. 213 [16 P. 887, 7 Am.St.Rep. 146], construed these sections in connection with subdivision 1 of

former section 1386 of the Civil Code[2] with regard to the right of an adopted child to succeed by inheritance to the estate of the adopting parent. The court concluded that it was necessary to read "child" and "children" in section 1386 of the Civil Code as including adopted children in order to give effect to the requirements that an adopted child, by virtue of that status, is to be "regarded and treated in all respects as the child of the person adopting" and is to "have all the rights and be subject to all the duties of the legal relation of parent and child." (Accord: *In re Williams,* 102 Cal. 70, 82 [36 P. 407, 41 Am.St.Rep. 163]; *cf. In re Johnson,* 98 Cal. 531 [33 P. 460, 21 L.R.A. 380]; *In re Evans,* 106 Cal. 562, 564-566 [39 P. 860].)

In *Estate of Jobson,* 164 Cal. 312 [128 P. 938, 43 L.R.A.N.S. 1062], the right of the natural parent of an adopted child to succeed to his estate was considered. The court noted that section 229 of the Civil Code relieved the parents of an adopted child "of all parental duties towards, and all responsibility for, the child" and of all right over it. It was held that the statutes relating to adoption implied that "the natural relationship between the child and its parents by blood is superseded." (P. 317.) The question of the right of inheritance of collateral relatives of the child and adopting parents was expressly left open.

However, when *In re Darling,* 173 Cal. 221 [159 P. 606], concerning the right of an adopted child to succeed to the estate of his natural grandparent, came before the court, it said: "The adoption statutes of this state do not purport to affect the relationship of any person other than that of the parents by blood, the adopting parents, and the child. It is the person adopting and the child who, by the express terms of the section, after adoption 'shall sustain towards each other the legal relation of parent and child and have all the rights and be subject to all the duties of that relation,' and it is

---

[2] "When any person having title to any estate dies without disposing of the estate by will, it is succeeded to and must be distributed . . . in the following manner:

"1. If the decedent leave no surviving husband or wife, but leave issue, the whole estate goes to such issue; and if such issue consists of more than one child living, or one child living and the lawful issue of one or more deceased children, then the estate goes in equal shares to the children living, or to the child living, and the issue of the deceased child or children, by the right of representation."

In 1931, the provisions of former section 1386 of the Civil Code were reenacted in the Probate Code as sections 220-229, and 231. (Stats. 1931, ch. 281, p. 596-598.)

the parents by blood who, from the time of the adoption, are 'relieved of all parental duties towards, and all responsibilities for the child so adopted, and have no right over it,' and are, in the eyes of the law, no longer its parents. The adoption simply fixes the *status* of the child as to its former and adopted parents. To its grandparents by blood it continues to be a grandchild, and the child of its parents by blood. It does not acquire new grandparents in the persons of the father and mother of an adopting parent.

"It is only in so far as it is necessary to protect the full rights of the child as a child of the adopting parents and the corresponding rights of the adopting parents as father and mother of the adopted child that the statutes relative to adoption can play any part in the construction of section 1386 of the Civil Code, the inheritance statute here involved. As was said in *Hockaday* v. *Lynn,* 200 Mo. 456 [98 S.W. 585, 118 Am.St.Rep. 672, 9 Ann.Cas. 775, 8 L.R.A.N.S. 117] : 'In fact, it may be laid down as a general conclusion that while the statute of adoption must be read into the statute of dower and that of descents and distribution, it is with this singularity always to be observed, viz., that the adopted child is so let in only for the purpose of preserving in full its right of inheritance from its adoptive parent.'

"This was followed by the statement 'and the door to inheritance is shut and its bolt shot at that precise point,' a statement which appears to be sustained by the authorities generally in the absence of plain statutory provision to the contrary." (Pp. 225-226.)

Cases arising in other states were reviewed extensively and were said to be consistent with this conclusion. "So far as we have been able to find, there is no decision given under statutes anything like ours to the effect that the adopted child has any right of inheritance as to the ancestors or collateral kindred of the adopting parents, or is deprived by the adoption of any right of inheritance that he had as to the ancestor and collateral kindred of his parents by blood." (P. 226.)

In *Estate of Pence,* 117 Cal.App. 323 [4 P.2d 202], the adopted son of decedent's predeceased brother sought to succeed as next of kin, pursuant to former section 1386 of the Civil Code, subdivision 5. (Now Prob. Code, § 226.) Upon the reasoning of the Darling case, it was held that "the rights of inheritance of an adopted child, although complete with respect to the adopting parent, do not extend to the collateral relatives of that parent." (P. 333.)

In these cases, all of which were decided prior to 1931, the statutes relating to the right of succession considered in connection with those relating to adoption, had been construed as follows: (1) the adopted child inherits from his adopting parents and they inherit from him; (2) upon adoption he ceases to inherit from his natural parents, and they cease to inherit from him; (3) the adopted child's status with regard to other natural relatives is not changed, and his right to inherit from them is not cut off by the adoption; and (4) by the adoption the child does not gain the right to inherit from collateral relatives of the adopting parents. Although no case squarely decided that collateral relatives of the adopting parents may not inherit from the child, it was stated in the Jobson case, *supra,* "[w]hatever the rule may be with respect to the right of succession, it must apply to both parties alike." (164 Cal. 315.)

In 1929, the Legislature created a code commission to revise, codify and restate the probate law. (Stats. 1929, p. 1427.) The commissioners' report was accepted, and in 1931 the Probate Code was enacted. Sections 227, 228 and 229 of the Civil Code relating to adoption were not changed but a new provision was added which reads: "An adopted child succeeds to the estate of one who has adopted him, the same as a natural child; and the person adopting succeeds to the estate of an adopted child, the same as a natural parent. An adopted child does not succeed to the estate of a natural parent when the relationship between them has been severed by the adoption, nor does such natural parent succeed to the estate of such adopted child." (Prob. Code, § 257.)

■ This statute did not change the existing law relating to the right of inheritance by and from adopted children, but is a restatement of it. "The commissioners realized that they were not authorized to propose changes in the substance of the existing laws, for in the report which they submitted with the draft of the Probate Code they stated: 'By the statute creating the Code Commission, its powers are limited to preparing such "restatement as would best serve clearly and correctly to express the existing provisions of law," and it is not within the province of the Code Commission to embody in its report any substantial changes in the existing laws.' (Cal. Prob. Code, Commissioners' Report, 1930, p. 10.)" (*Estate of Hebert,* 42 Cal.App.2d 664, 667-668 [109 P.2d 729].)

In the Hebert case, the effect of the enactment of section 257 of the Probate Code upon an adopted child's right to

succeed by representation was considered. The court said: ''The same legislature which enacted the code section above quoted [section 257 of the Probate Code] also enacted section 222 of the Probate Code, which was based upon section 1386 of the Civil Code. Both of these sections provide that the issue of a decedent shall inherit by right of representation. At the same time the legislature continued in effect the adoption provisions of the Civil Code, sections 227-229. These sections had theretofore been construed as granting inheritance rights to the children of a predeceased adopted child of the adopting parent. (Citations.)

''If a statute has been judicially construed and is later reenacted in the same or substantially the same terms it is presumed that the legislature was familiar with the construction which had been placed upon the statute by the courts and that such construction, in the absence of an express provision requiring a different construction, was adopted by the legislature as a part of the law. (Citations.) It is clear that if section 257 had been omitted when the Probate Code was enacted it would have been the clear duty of the court to declare the respondents to be the heirs of decedent. We find nothing in section 257 requiring any other determination, since it is a 'restatement' designed to 'clearly and correctly express the existing provisions of law' as interpreted by the courts.'' (42 Cal.App.2d 668.)

That reasoning is equally applicable to the other provisions of former section 1386 of the Civil Code reenacted in the Probate Code. ▆ It must be presumed that the construction placed upon them by previous decisions, to the effect that adoption effects a change in status for the purpose of inheritance only between the child and his natural parents and between him and his adoptive parents, was carried into the new sections, and that section 257 of the Probate Code is a restatement of that construction.

Since 1931, the cases considering section 257 have uniformly so construed it, and have applied it so as to exclude a right of inheritance between an adopted child and kindred of the adopting parents. (*Estate of Jones,* 3 Cal.App.2d 395, 400 [39 P.2d 847] [holding an adopted daughter of the testatrix' husband's predeceased brother was not the husband's ''heir''] ; *Estate of Stewart,* 30 Cal.App.2d 594, 598 [86 P.2d 1071] [holding that the adopted children of the testator's cousin are not ''next of kin''] ; *Estate of Kruse,* 120 Cal.App.2d 254, 256 [260 P.2d 969] [holding that the adopted daughter

of the testatrix' sister is not an "heir"]; see also *Estate of Pierce*, 32 Cal.2d 265, 269 [196 P.2d 1]; comment 25 Cal.L. Rev. 81, 85-87.) As stated in the Kruse case, "It has been consistently held that an adopted child while he inherits *from* his adopting parents does not inherit *through* them from the relatives of the adoptive parents." (120 Cal.App.2d 256.)

 In no decision has the court determined the status of an adopted child as a "brother or sister" within the meaning of section 225 of the Probate Code. However, the basis for excluding rights of inheritance in cases concerning members of the adopting family other than the parents is that adoption affects only the rights between the child and his natural parents and between him and his adopting parents. From that principle it logically follows that inheritance between an adopted child and his foster brothers and sisters is excluded.

Dictum in *Estate of Esposito*, 57 Cal.App.2d 859 [135 P.2d 167], supports this conclusion: "It has never been held," said the court, "so far as we are advised, that adoption does more than substitute foster parents for natural parents, without affecting the relationship of the child toward its relatives by blood and without creating new relationships with the kindred of the foster parents. So far as the right of inheritance is concerned, the child does not acquire new brothers and sisters in the persons of the natural children of the adoptive parents (citation) nor lose the brothers and sisters of its own blood." (Pp. 865-866.)

Mrs. Oreb relies upon several decisions as indicating a legislative intent to make a more complete substitution in the status of the adopted child than is indicated in the cases which have been discussed. These decisions, however, do not involve the right of intestate succession except insofar as that right stems from a statute applicable because of the child's status in relationship to the adopting parent. They are consistent with the principle of the Darling case, and many of them expressly recognize and approve its reasoning. (*Cf. Estate of Mercer*, 205 Cal. 506, 508 [271 P. 1067] [adopted daughter of predeceased husband as "child" under former Civ. Code, § 1386, subd. 8; now Prob. Code, § 228]; *Estate of Winchester*, 140 Cal. 468 [74 P. 10], and *Estate of Morris*, 56 Cal.App.2d 715 [133 P.2d 452] [considering an adopted child as "issue" for the purposes of inheritance tax exemptions]; *Estate of Wardell*, 57 Cal. 484 [pretermitted heir statutes]; *Estate of Esposito, supra*, 57 Cal.App.2d 859 [antilapse statute]; see comment, 25 Cal.L.Rev. 81, 85-87.)

Both Mrs. Oreb and Pettit have cited many decisions in other jurisdictions. These and other cases are collected in annotations in 38 American Law Reports 8, and 120 American Law Reports 837, where the determination of the question here concerned is said to depend upon the wording of the particular statute involved. Because of the various and conflicting provisions of the statutes, there is no basis upon which the cases in other states may be reconciled.

When the original adoption statutes were enacted, adoptions were infrequent and most often occurred when the parents consented to the adoption of their child by persons known to them, or as a consequence of the assumption of care and custody of an orphan by a blood relative. Under present-day conditions it may be the better social policy to substitute the relationship of the adoptive family for that of the blood relatives. With many children placed for adoption by agencies licensed for that purpose, there has developed a demand for secrecy as to the identity of the blood relatives, and in most cases, for all practical purposes, an adopted child is entirely cut off from his natural family relationships.

This court may not usurp the legislative function to change the statutory law which has been uniformly construed by a long line of judicial decisions. (See *Estate of Stewart*, 30 Cal.App.2d 594, 598 [86 P.2d 1071] ; note 2 U.C.L.A. Law Rev. 269.) Moreover, any change should be made only after a complete examination of all of the consequences. If adoption is to effect a complete substitution in family relationship, the legal rights of collateral relatives should be fully considered in connection with statutes relating to pretermitted heirs, inheritance taxes and the like.

Finally some significance is attached to the fact that Calhoun's estate consists of property to which Mrs. Oreb would have succeeded had George predeceased his adoptive mother, and to the alleged fact that he had never known his natural parents or natural brother. The record is silent upon the latter point, and the former is fully answered by the court in the Jobson case: "It may properly be observed . . . that the rights of the parties are not affected by the circumstance that the estate in dispute was derived entirely from the adopting parent. The source from which the property came may well influence one's notions of the natural equity of the appellant's claim. But our statute of succession, in providing for the disposition of the separate property of one dying intestate, makes no distinctions based upon the channel

through which the property may have come to the decedent."
(164 Cal. 314.)

The order is affirmed.

Gibson, C. J., Shenk, J., Schauer, J., and Spence, J., concurred.

TRAYNOR, J.—I dissent.

The interpretation placed upon the relevant statutes by the majority opinion results in consequences totally at variance with the objective of making the relationship between adoptive parents and their adopted child as close to the natural relationship as possible. (See *Adoption of McDonald*, 43 Cal. 2d 447, 459 [274 P.2d 860]; *In re Santos*, 185 Cal. 127, 130 [195 P. 1055]; 2 Armstrong California Family Law, 1242-1243.) Children who have been raised together as brothers and sisters are set against one another whenever intestate succession from another than their parent is involved, and rights of natural kindred whose existence or identity will frequently be unknown to the adoptive family are allowed to intervene between foster brothers and sisters who have known no others. Although the Legislature has made detailed provisions for the issuance of new birth certificates and the sealing of original records in cases of adoption to promote and protect the adoptive relationship (Health & Saf. Code, §§ 10251-10254), in many cases of intestate succession this policy of secrecy will have to be evaded or the estates of adopted children will perforce escheat to the state. In other cases, natural grandchildren who have been adopted will be permitted to claim as pretermitted heirs of natural grandparents who had no knowledge of their existence or identity. (Prob. Code, § 90.) The statutes do not expressly provide for these results, and in my opinion by adopting the Probate Code in 1931 the Legislature did not accept and approve of the interpretation placed upon the superseded provisions of the Civil Code by *In re Darling*, 173 Cal. 221 [159 P. 606].

As the majority opinion points out, by enacting section 257 of the Probate Code,* the Legislature did not change the

---

*"An adopted child succeeds to the estate of one who has adopted him, the same as a natural child; and the person adopting succeeds to the estate of an adopted child, the same as a natural parent. An adopted child does not succeed to the estate of a natural parent when the relationship between them has been severed by the adoption, nor does such natural parent succeed to the estate of such adopted child."

existing law governing intestate succession by or from adopted children (see also *Estate of Hebert,* 42 Cal.App.2d 664, 667-668 [109 P.2d 729]), and that section only governs rights of inheritance between the adopted child and adoptive parents and the adopted child and natural parents. Thus, to determine whether an adopted child may inherit through an adoptive parent or whether natural relatives may inherit from an adopted child through its natural parent, it is necessary to construe the provisions of the Probate Code in the light of the provisions of the Civil Code governing the status of an adopted child.

Section 228 of the Civil Code provides: "A child when adopted, may take the family name of the person adopting. After adoption, the two shall sustain towards each other the legal relation of parent and child, and have all the rights and be subject to all the duties .of that relation." Section 229 provides: "The parents of an adopted child are, from the time of the adoption, relieved of all parental duties toward, and all responsibility for, the child so adopted, and have no right over it." In interpreting these statutes in *In re Darling, supra,* the court stated: "The adoption statutes of this state do not purport to affect the relationship of any person other than that of the parents by blood, the adopting parents, and the child. It is the person adopting and the child who, by the express terms of the section, after adoption 'shall sustain towards each other the legal relation of parent and child and have all the rights and be subject to all the duties of that relation,' and it is the parents by blood who, from the time of the adoption, are 'relieved of all parental duties towards, and all responsibilities for the child so adopted, and have no right over it,' and are, in the eyes of the law, no longer its parents. The adoption simply fixes the *status* of the child as to its former and adopted parents. To its grandparents by blood it continues to be a grandchild, and the child of its parents by blood. It does not acquire new grandparents in the persons of the father and mother of an adopting parent." (173 Cal. 221, 225-226.) It is immediately apparent that the court in the Darling case failed to give effect to the provision of the statute that the adopted child shall have "all of the rights" of "the legal relation of parent and child," and accordingly recognized only a restricted and imperfect "legal relation of parent and child." Thus a child is entitled to inherit from his grandparent only because he is the child of the deceased child of the grandparent and thus solely

because of the parent-child relationship. An adopted child is not given all of the rights of that relationship if he may not also inherit from his adoptive grandparent or through his adoptive parent in any case in which a natural child could do so.

The conclusion that the court erred in its interpretation of section 228 in the Darling case finds further support in legislative history. The forerunner of section 228, after providing that the adoptive parent and child should "bear toward each other the legal relation of parent and child," and that the child should "enjoy all the legal rights and [be] subject to all the duties appertaining to that relation," expressly stated "except, however, that if the adopted child leaves descendants, ascendants, brothers or sisters, the party adopting, nor his relatives, shall not inherit the estate of the adopted child. . . ." (Stats. 1869-1870, pp. 530-531.) Thus the Legislature clearly recognized that the legal relation of parent and child would result in the child's becoming a member of the adoptive family for all purposes of inheritance and expressly provided for the exceptions thought desirable, and it must be presumed that it intended to change the law when it deleted the exception in 1872. (*In re Trombley,* 31 Cal.2d 801, 806-807 [193 P.2d 734].)

The rationale of the Darling case has never been consistently followed. In other situations involving adopted children it has been recognized that the adoptive relationship necessarily affects the status of the adopted child with respect to third parties. Thus, even in *In re Darling* it was recognized that if an adopted child is to have "all of the rights" of the parent-child relationship, his children must in turn be allowed to inherit from their adoptive grandfather (173 Cal. 221, 225; see also *Estate of Winchester,* 140 Cal. 468, 469-470 [74 P. 10]), and in *Estate of Pierce,* 32 Cal.2d 265, 270 [196 P.2d 1], it was pointed out in discussing the antilapse statute (Prob. Code, § 92) that " 'The law . . . creating the status is found in section 228 of the Civil Code providing that "after adoption the two shall sustain towards each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation." . . . That such adopted child is to be considered an "issue" and a lineal descendant of the adopting parent, has been on several occasions recognized by our courts. . . . To exclude adopted children from its scope would be to say that they are not entitled as to the adopting parent, to the full rights of natural

children, which is contrary to the express provision of the statute.' '' (Quoting from *Estate of Moore,* 7 Cal.App.2d 722, 724 [47 P.2d 533, 48 P.2d 28] ; see also *Estate of Tibbetts,* 48 Cal.App.2d 177, 178 [119 P.2d 368] ; *Estate of Esposito,* 57 Cal.App.2d 859, 865 [135 P.2d 167].) Although the Pierce, Tibbetts, and Esposito cases recognized the rule of the Darling case, none of them explained why the provisions of section 228 must be read into section 92 of the Probate Code but be ignored in considering intestate succession through an adoptive parent, and the statutes themselves provide no basis for such a distinction. If section 228 of the Civil Code requires that the adopted child be allowed to take from his adoptive grandparent under the antilapse provisions of section 92 of the Probate Code, it must also require that he be allowed to take by intestate succession. In either situation he can take only because he is a child of the adoptive parent, and if the adoption changes his status with respect to the adoptive grandparent in one situation it must do so also in the other.

If it is true that the Legislature adopted the rule of the Darling case when it enacted the Probate Code in 1931, it might be suggested that the Moore, Tibbetts, and Esposito cases, decided since that time, should be disapproved. The Darling case did not, however, represent a settled rule in this state at the time it was decided (see *Estate of Jobson,* 164 Cal. 312, 317 [128 P. 938, 43 L.R.A.N.S. 1062], expressly leaving the question open), and the cases that have followed it were all decided after the Probate Code was enacted. (*Estate of Pence,* 117 Cal.App. 323, 333 [4 P.2d 202] ; *Estate of Jones,* 3 Cal.App.2d 395, 398 [39 P.2d 847] ; *Estate of Stewart,* 30 Cal.App.2d 594, 596-597 [86 P.2d 1071] ; *Estate of Kruse,* 120 Cal.App.2d 254, 255-256 [260 P.2d 969].) Moreover, in 1928, the court rejected the rationale of the Darling case in *Estate of Mercer,* 205 Cal. 506 [271 P. 1067], and held that an adopted child of a predeceased spouse could take under the predecessor of section 228 of the Probate Code on the death of the surviving spouse. ''Appellant admits that the word 'issue' in several places in said section does include an adopted child. Again, an adopted child has been held to be a lineal descendant of the adopting parent. [Citations.] If this be conceded, it argues strongly for the rule that an adopted child is entitled to any legacy the law gives to the children of an adopting parent.'' (205 Cal. 506, 511.) Although the Mercer case has been distinguished from the

Darling case on the ground that the adopted child in the Mercer case did not inherit through her predeceased adoptive mother but indirectly from her (see *Estate of Kruse,* 120 Cal. App.2d 254, 257 [260 P.2d 969]), this distinction is not justified in the light of the cases that have considered the character of succession under section 228. That section ''is as much a part of the law of succession as any other, and those who inherit under it take as heirs of the decedent widow or widower, not as the heirs of the predeceased spouse.'' (*Estate of Watts,* 179 Cal. 20, 23 [175 P. 415].) ''The respondent's relationship to her deceased mother would be the determining factor in establishing her status as an heir of [her stepfather] ; but the title to the property she is entitled to receive by reason of that status would not relate back for its origin, to her mother. It would come directly to her from her stepfather. She would take as . . . [his] heir. . . .'' (*Estate of Marshall,* 42 Cal.App. 683, 687 [184 P. 43] ; see also *Estate of Jobson,* 164 Cal. 312, 314 [128 P. 938, 43 L.R.A.N.S. 1062].) Moreover, the Mercer case was not decided on the theory that the adopted child inherited indirectly from her predeceased adoptive parent but on the ground, as noted above, that she was ''entitled to any legacy that the law gives to the children of an adopting parent.''

It thus appears that both before and after the enactment of the Probate Code the cases have been in essential conflict with respect to inheritance by or from adopted children. Given the conflicting theories relied upon in the cases decided before the enactment of the Probate Code and the fact that the last decision before that time was clearly not in harmony with the relationale of the Darling case, it cannot reasonably be said that the Legislature adopted the rule of that case when it enacted the Probate Code. Accordingly, this court is free to resolve the conflict in the decisions in the light of the clearly expressed policy of section 228 of the Civil Code and sections 10251 to 10254 of the Health and Safety Code. Whatever doubt there may have been with respect to that policy in the past, it is clear today that the objective of adoption is the ''consummation of the closest conceivable counterpart of the relation of parent and child,'' in which the child becomes a member ''to all intents and purposes, of the family of the foster parents.'' (*In re Santos, supra,* 185 Cal. 127, 130; see also *Adoption of McDonald, supra,* 43 Cal.2d 447, 459 [274 P.2d 860].) Only by treating the adoptive child

as a natural child for all purposes of inheritance is that objective obtained.

The order should be reversed.

Carter, J., concurred.

Appellant's petition for a rehearing was denied May 25, 1955. Carter, J., and Traynor, J., were of the opinion that the petition should be granted.