[Civ. No. 28419. First Dist., Div. One. Aug. 26, 1971.]

Estate of AUGUST HANEBERG, Deceased.
MICHELE CLAIRE SERRANO et al.,
Petitioners and Respondents, v.
CATHERINE LOUISE HANEBERG, a Minor, etc., et al.,
Contestants and Appellants.

**COUNSEL**

Burnhill, Rode, Moffitt & Moore and Cyril Viadro for Contestants and Appellants.

Rudy, Rapoport & White and James D. Holden for Petitioners and Respondents.

**OPINION**

**MOLINARI, P. J.**—This is an appeal from a judgment of the court which determined the conflicting claims of two sets of claimants to part of the income of a testamentary trust created under the provisions of the last will and testament of August Haneberg, deceased.

The testator died on August 11, 1927, leaving a will which created a testamentary trust. The material provisions of the trust, as subsequently incorporated in the decree of final distribution, provided as follows:

"(c) To pay the balance of the net income of my said trust estate in equal shares to my four adopted children, being the children of Mary Keala, namely to JOHANNE HANEBERG CORREA, EMMA DESHA, HENRY HANEBERG and GEORGE HANEBERG, as long as they respectively shall survive, and to the surviving issue of such of my said four adopted children

as shall die before the termination of this trust, taking per stirpes by right of representation, the share their parents would have taken if he or she had survived, so that the share of any of my said four adopted children dying before the termination of the trust leaving issue surviving shall go to the issue, and the share of any of my said adopted children dying and not leaving issue surviving, or the share of said issue surviving their parent and dying without issue before the termination of the trust, shall be added to the other shares pro-rata and be disposed of accordingly.

"(d)  On the death of the last survivor of my said four adopted children to retain in trust so much of the principal of said trust estate as will produce an income sufficient to pay to my said wife Two Hundred Fifty Dollars ($250.00) a month during the remainder of her life and to pay to my said brother or his wife, as the case may be, their said annuities, and to transfer and convey in fee simple free from any trust all of the balance of my said trust estate or all of my said trust estate, if my said wife and my said brother and his wife, shall then be dead, as follows:

"The rest, residue and remainder of said trust estate to the lawful issue who shall then be surviving of my said four adopted children, equally share and share alike taking per stirpes and not per capita."

Henry Haneberg, one of the four named income beneficiaries, died on October 16, 1927, leaving five children who thus became entitled to his share of the income. One of these children, Neal Stanley Haneberg, was the natural father of six children who were born after the testator's death. Two of these children, Michele Claire Serrano and Neal Stanley Serrano, were adopted on November 17, 1966 by their stepfather and their natural mother. When Neal Haneberg died on April 21, 1969, a question arose as to the manner in which his share of the trust income should be divided.[1] The testamentary trustee petitioned for instructions whether such share should be divided into six equal sub-shares among all six of the children Neal Haneberg had sired, or into four equal sub-shares by the exclusion of Michele and Neal, who had been adopted by their stepfather and natural mother. The trial court determined that Neal Haneberg's share of the net trust income should be divided into six sub-shares.

In *Estate of Russell*, 17 Cal.App.3d 758, 766 [95 Cal.Rptr. 88], we held recently that where a testamentary trust provided for distribution to a class of remaindermen described as " 'children or issue surviving' " of certain primary beneficiaries with life estates therein, such class of remaindermen did not include a child born after the testator's death who was adopted by strangers in blood to the testator before the termination of

---

[1]This share was one-twentieth of the entire net income, i.e., one-fifth of Henry Haneberg's one-fourth share of such income.

the trust. The rationale upon which our holding was based is that, absent a contrary expressed intent, a testator is presumed to have intended to pursue a course consonant with that expressed in the statutes, case law and public law with regard to the inheritance rights of adopted children. In *Russell,* the will was executed in 1959 at a time when, under the law and public policy, an adopted child, upon the severing of the relationship between him and his natural parent, succeeded to or inherited the estate of one who had adopted him and not the estate of his natural parent or a relative of the natural parent. (Prob. Code, § 257; see *Estate of Russell, supra,* at p. 767; *Estate of Heard,* 49 Cal.2d 514, 519-522 [319 P.2d 637]; *Estate of Garey,* 214 Cal.App.2d 39, 41-42 [29 Cal.Rptr. 98]; *Estate of Goulart,* 222 Cal.App.2d 808, 820-823 [35 Cal.Rptr. 465].)

In *Russell,* we placed strong reliance on *Heard* which held that the phrase "lawful issue" used in a will included a child adopted by the testator's son after the will was made and the testatrix was deceased. *Heard* took cognizance of the public policy embodied in the adoption statutes (Civ. Code, §§ 221, 227, 228) and particularly that embodied in Probate Code section 257, the succession statute providing for the inheritance rights of adopted children. (49 Cal.2d 514, at pp. 519-522.)

Probate Code section 257, when it was first adopted in 1931, provided essentially that an adopted child succeeded to the estate of one who had adopted him and did not succeed to the estate of a natural parent when the relationship between them had been severed by the adoption. In 1955 the statute was amended to provide, insofar as pertinent to our discussion, that an adopted child shall be deemed a descendant of one who has adopted him for all purposes of succession by or through the adopting parent, and that he does not succeed to the estate of a natural parent when the relationship between them has been severed by adoption, nor does such adopted child succeed to the estate of a relative of the natural parent.

The instant case is similar to *Russell* in that the testamentary trust provided for a distribution to a class of remaindermen described as "the surviving issue" and the "lawful issue who shall then be surviving" of certain primary beneficiaries with life estates therein; in that the two children whose right to succeed is in question were born after the testator's death; and in that said children were adopted by a stranger in blood to the testator before the termination of the trust. There is, however, an important distinction between the two cases. In *Russell,* the testator executed his will in 1959 at a time when Probate Code section 257 was in effect containing not only the essentials originally provided for when it was enacted in 1931, but also the provisions engrafted upon it by the 1955 amendment. In the instant case the will was executed in 1926, more than five years

before the enactment of Probate Code section 257, and the testator died approximately four years before such enactment.

At the time the instant will was executed it was the law of the state that a child adopted out of the family could not inherit from his natural parents but that he could inherit from an ancestor or collateral kindred of his natural parents. (*In re Darling,* 173 Cal. 221, 225-228 [159 P. 606]; *Estate of Calhoun,* 44 Cal.2d 378, 382-384 [282 P.2d 880]; see *Estate of Dolan,* 169 Cal.App.2d 628, 629 [337 P.2d 498].) In *Darling* it was held that a child adopted out of the family was entitled to succeed to the share in the estate of the father of his natural father upon the rationale that such an adoption did not deprive the adopted child of the right to inherit from his relatives by blood unless a statute provided otherwise. (At pp. 225-228.) In that case the Supreme Court was called upon to construe subdivision 1 of former Civil Code section 1386 which, in pertinent part, provided that "If the decedent leaves no surviving husband or wife, but leaves *issue,* the whole estate goes to such *issue;* and if such *issue* consists of more than one child living, or one child living and the *lawful issue* of one or more deceased children, then the estate goes in equal shares to the children living, or to the child living and the *issue of the deceased child or children by right of representation.*" (Italics added.) In construing this statute the reviewing court stated: "But his relationship to his grandparents by blood on either side is not affected by the adoption. *As to them* he is, notwithstanding the adoption, the 'issue' or child of their child within the meaning of section 1386 of the Civil Code." (At p. 228.)

In 1931 the provisions of former section 1386 of the Civil Code were reenacted as sections 220-229, and 231 of the Probate Code. (Stats. 1931, ch. 281, pp. 596-598.) A new provision, Probate Code section 257, was added, providing essentially as hereinabove set out.[2] This statute, however, "did not change the existing law relating to the right of inheritance by and from adopted children, but is a restatement of it." (*Estate of Calhoun, supra,* 44 Cal.2d 378, 384.) In *Estate of Hebert,* 42 Cal.App.2d 664, 667-668 [109 P.2d 729], the appellate court, in considering the effect of the enactment of section 257 of the Probate Code upon an adopted child's right to succeed by representation, stated: "The same legislature which enacted the code section . . . also enacted section 222 of the Probate

[2]Section 257 before September 7, 1955, provided as follows: "An adopted child succeeds to the estate of one who has adopted him, the same as a natural child; and the person adopting succeeds to the estate of an adopted child, the same as a natural parent.

"An adopted child does not succeed to the estate of a natural parent when the relationship between them has been severed by the adoption, nor does such natural parent succeed to the estate of such adopted child."

Code, which was based upon section 1386 of the Civil Code. Both of these sections provide that the issue of a decedent shall inherit by right of representation." (At p. 668.)

It was not until the 1955 amendment to Probate Code section 257 that an adoptive child was deemed a descendant of the adoptive parent for all purposes and that such child was completely removed from his natural family "so that he would no longer succeed to the estate of any of his collateral relatives, nor could they succeed to his estate." (*Estate of Dolan*, *supra*, 169 Cal.App.2d 628, 629.)

■ In view of the foregoing we must conclude, under the rationale of *Heard* and *Russell*, that the testator in the instant case was bound to know the existing statutes affecting testamentary dispositions at the time he executed the will, and that, not having expressed a contrary intent, he intended that his will would be compatible with the general body of the law and public policy. As we have pointed out, it was the statutory law and public policy up until the enactment of the amendment to Probate Code section 257 in 1955 that upon adoption the adopted child ceases to inherit from his natural parents, and they ceased to inherit from him, but that his status with regard to other natural relatives was not changed, and this right to inherit from them was not cut off by the adoption. (See *Estate of Calhoun*, *supra*, 44 Cal.2d 378, 384; *Estate of Dolan*, *supra*, 169 Cal.App.2d 628, 629.)

Recently, in *Abramovic* v. *Brunken*, 16 Cal.App.3d 719, 723 [94 Cal. Rptr. 303], the appellate court, adopting the rationale of *Heard*, held that dispositive phrases of the testator's will referring to his son's "children" and "issue" indicated an intention to provide for biological matrimonial descendants and not an adult adopted by his son where, at the time the testator made his will in 1940, neither he nor his attorney could know that some 11 years after the testator's death it would become legal to adopt an adult and that his son would do so.

We conclude, therefore, that although Michele Claire Serrano and Neal Stanley Serrano cannot inherit from their natural father, they can inherit from the testator, their natural paternal great-grandfather.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 21, 1971.